**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re:<br><br>CHARGE ENTERPRISES, INC.,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy Case No. 24-10349 (TMH)<br><br>Bankr. BAP No. 24-0081 |
| CRAIG DENSON and<br>LEAH SCHWELLER,<br><br>Appellants,<br><br>v.<br><br>CHARGE ENTERPRISES, INC.,<br><br>Appellee. | Case No. 24-cv-01426 (MN) |

**OPENING BRIEF ON APPEAL**

**McCARTER & ENGLISH LLP**

Kate R. Buck (DE# 5140)
Matthew J. Rifino (DE# 4749)
Renaissance Centre
405 N. King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
Kbuck@mccarter.com
Mrifino@mccarter.com

*Attorneys for Appellants*

Dated: April 28, 2025

# TABLE OF CONTENTS

**Page**

STATEMENT OF APPELLATE JURISDICTION ....... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....... 1

CONCISE STATEMENT OF THE CASE ....... 2

SUMMARY OF THE ARGUMENT ....... 12

ARGUMENT ....... 12

I. Standard of Review ....... 12

II. Legal Argument ....... 13

A. The Bankruptcy Rules Required Debtor To Seek Subordination Of The Proofs Of Claim By Adversary Complaint. ....... 14

B. The Indemnity Claims Do Not Arise From The Sale Or Purchase Of Debtor's Shares. ....... 18

CONCLUSION ....... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*,
197 F.3d 76 (3d Cir. 1999) ....................12

*In re Arcapita Bank B.S.C.(c)*,
Case No. 12-11076, 2014 WL 2109931 (Bankr. S.D.N.Y. May 20, 2014) ....................17

*In re Brown*,
Case No. 18-10617, 2023 WL 6051957 (Bankr. S.D.N.Y. Sept. 15, 2023) ....................16

*In re Christian Life Ctr.*,
821 F.2d 1370 (9th Cir. 1987) ....................22

*In re CIT Grp. Inc.*,
460 B.R. 633 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 Fed. Appx. 393 (2d Cir. 2012)....................21, 25, 27

*In re Cybersight LLC*,
Case No. 04-112-JJF, 2004 WL 2713098 (D. Del. Nov. 17, 2004)....................13, 26

*In re DirecTV Latin Am., LLC*,
Case No. 03-981-SLR, 2004 WL 302303 (D. Del. Feb. 4, 2004)....................13, 26, 27

*In re F-Squared Inv. Mgmt. LLC*,
Case No. 18-1214, 2019 WL 1417464 (D. Del. Mar. 29, 2019)....................17

*In re GSE Envir., Inc.*,
Case No. 16-616, 2017 WL 5490833 (D. Del. Nov. 15, 2007)....................15, 21

*In re Int'l Wireless Commc'ns Holdings, Inc.*,
279 B.R. 463 (D. Del. 2002), *aff'd*, 68 Fed. Appx. 275 (3d Cir. 2003) ....................21, 27

*In re Int'l Wireless Commc'ns Holdings, Inc.*,
68 Fed. Appx. 275(3d Cir. 2003)....................22, 27

*In re J.S. II, L.L.C.*,
389 B.R. 570 (Bankr. N.D. Ill. 2008) ....................17

*In re Kaiser Grp. Int'l, Inc.*,
260 B.R. 684 (Bankr. D. Del. 2001), *aff'd*, Case No. 00-2263, 2001 WL 34368405 (D. Del. Nov. 29, 2001) ....................21

*In re Lehman Bros. Inc.*,
808 F.3d 942 (2d Cir. 2015) ....................20

*In re Mid-American Waste Sys., Inc.*,
228 B.R. 816 (Bankr. D. Del. 1999) ....................22, 23, 25

*In re Mobil Tool Intern., Inc.*,
306 B.R. 778 (Bankr. D. Del. 2004) ....................26

*In re Nationsrent, Inc.*,
381 B.R. 83 (Bankr. D. Del. 2008) ....................26

*In re Peck Jeep Eagle Inc.*,
Case No. 17-0013 8-LA7, 2021 WL 1511640 (Bankr. S.D. Cal. Apr. 15, 2021) ....................16

*In re Peregrine Sys., Inc.*,
Case No. 02-12740, 2004 WL 716714 (Bankr. D. Del. Mar. 30, 2004) ....................21

*In re Protarga, Inc.*,
Case No. 03-12564, 2004 WL 1906145 (Bankr. D. Del. Aug. 25, 2004) ....................17

*In re Pub. Serv. Co. of New Hampshire*,
129 B.R. 3 (Bankr. D. N.H. 1991) ....................22

*In re Response U.S.A., Inc.*,
288 B.R. 88 (D. N.J. 2003) ....................27

*In re RTI Holding Co., LLC*,
Case No. 20-12456, 2021 WL 3409802 (Bankr. D. Del. Aug. 4, 2021) ....................19, 21, 22, 27

*In re Spectrum Alliance, LP*,
609 B.R. 11 (E.D. Pa. 2019) ........................................................................27

*Stucki v. Orwig*,
Case No. 3:12-cv-1064, 2013 WL 1499377 (N.D. Tex. Apr. 12, 2013) ..........................................................................................26

*In re Telegroup, Inc.*,
281 F.3d 133 (3d Cir. 2002) ............................................................ *passim*

*In re Touch Am. Holdings, Inc.*,
381 B.R. 95 (Bankr. D. Del. 2008)..............................................................22, 24

*In re USA Commercial Mortg. Co.*,
377 B.R. 608 (9th Cir. B.A.P. 2007)........................................................................17

*In re Wash. Mut., Inc.*,
462 B.R. 137 (Bankr. D. Del. 2011)..........................................................................16

*In re Wash. Mut., Inc.*,
464 B.R. 656 (Bankr. D. 2012)..............................................................21, 22

**Statutes and Rules**

11 U.S.C. § 502(a) ..........................................................................13

11 U.S.C. § 510(b) ..........................................................................*passim*

28 U.S.C. § 158..........................................................................12

28 U.S.C. § 158(a)(1)..........................................................................1, 12

Fed. R. Bankr. P. 3001(a) ..........................................................................13

Fed. R. Bankr. P. 3001(f)..........................................................................13

Fed. R. Bankr. P. 3007..........................................................................*passim*

Fed. R. Bankr. P. 3007(b) ..........................................................................14, 15

Fed. R. Bankr. P. 7001..........................................................................*passim*

Fed. R. Bankr. P. 7001(h) ..........................................................................15, 16, 17

**Other Authorities**

4 COLLIER ON BANKRUPTCY § 501.02[d] (16th ed. 2025) ......................................14

## STATEMENT OF APPELLATE JURISDICTION

The Court possesses appellate jurisdiction over this matter under 28 U.S.C. § 158(a)(1), in which Appellants Craig Denson ("**Denson**") and Leah Schweller ("**Schweller**," along with Denson, the "**Officers**") have appealed that certain Memorandum Opinion and Order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), dated December 16, 2024 (the "**Opinion**"), sustaining the first omnibus objection of Charge Enterprises, Inc. ("**Debtor**") to the Officers' proofs of claim and subordinating such claims under Section 510(b) of Title 11 of the United States Code (the "**Bankruptcy Code**").

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents the following questions of law:

1. Whether the Bankruptcy Court erred as a matter of law by failing to overrule or deny Debtor's omnibus objection based on Debtor's failure to seek subordination of the Officers' proofs of claim by adversary proceeding under Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")?
2. Whether the Bankruptcy Court erred as a matter of law by subordinating the Officers' proofs of claim against Debtor's estate under Section 510(b) of the Bankruptcy Code?

## CONCISE STATEMENT OF THE CASE

Denson and Schweller served as Debtor's Chief Operating Officer and Chief Financial Officer, respectively [A00317]. On or about January 26, 2023, Debtor's shareholders adopted or ratified that certain Amended and Restated Bylaws Effective as of January 26, 2023 (the "**Bylaws**") [A00004-19]. Under Section 1 of Article IX of the Bylaws:

> Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "Proceeding"), by reason of the fact that he or she is or was a director or an officer of the Corporation or is or was serving at the request of the Corporation as a director, officer or trustee of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter an "Indemnitee"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer or trustee or in any other capacity while serving as a director, officer or trustee, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than such law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such Indemnitee in connection therewith; *provided, however*, that, except as provided in Section 3 of this Article IX with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such Indemnitee in connection with a Proceeding (or part thereof) initiated by such Indemnitee only if such Proceeding (or part thereof) was authorized by the Board of Directors of the Corporation or is expressly required by law.

[A00016]. Section 4 indicates that the right to indemnification under the Bylaws "shall not be exclusive of any other right that any person may have or hereafter acquire under any statute, the Corporation's Certificate of [I]ncorporation, these Bylaws, agreement, vote of stockholders or directors or otherwise" [A00017]. Further, Section 7 states that "[t]he rights conferred upon indemnitees in this Article IX shall be contract rights and such rights shall continue . . ." [A00018].

On February 7, 2023, Debtor and Schweller entered into that certain Charge Enterprises, Inc. Indemnification Agreement (the "**Schweller Indemnification Agreement**"). The Schweller Indemnification Agreement acknowledged the increased risk of litigation directed to officers of public corporations, like Debtor, and that contractual rights to indemnification and insurance coverage served Debtor's best interests in "retain[ing] and attract[ing] as directors and officers the most capable persons . . ." [A00139]. Section 2 of the Schweller Indemnification Agreement states:

> Indemnification. Subject to Section 8 and Section 9 of this Agreement, the Company shall indemnify Indemnitee, to the fullest extent permitted by the laws of the State of Delaware in effect on the date hereof … against any and all Losses if Indemnitee was or is becomes a party to or participant in, or is threatened to be made a party to or participant in, any Claim by reason of or arising in part out of an Indemnifiable Event, including, without limitation, Claims brought by or in the right of the Company, Claims brought by third parties, and Claims in which the Indemnitee is solely a witness.

[A00142]. Section 8(a) of the Schweller Indemnification Agreement, entitled 'Mandatory Indemnification,' requires Debtor to indemnify Schweller to the extent that she has been "successful on the merits or otherwise in defense of any Claim relating to an Indemnifiable Event or any portion thereof or in defense of any issue or matter therein, including without limitation dismissal without prejudice . . ." [A00144]. However, if a court has not yet decided a 'Claim', or in the alternative, a court has not decided a 'Claim' in Schweller's favor, Debtor must still indemnify Schweller unless Debtor determined within a specified period of time that Schweller did not satisfy the requisite 'Standard of Conduct' [A00144-45].

That same day, Debtor and Denson entered into that certain Charge Enterprises, Inc. Indemnification Agreement (the "**Denson Indemnification Agreement**," along with the Schweller Indemnification Agreement, the "**Indemnity Agreements**") [A00292-309]. The Denson Indemnification Agreement is nearly identical to the Schweller Indemnification Agreement, but for the Officers' respective names [A00139-151; A00292-309].

On March 7, 2024 (the "**Petition Date**"), Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code . The next day, Debtor received a legal notice from parties affiliated with the Arena Plaintiffs (defined below) expressing their intent to file suit against Debtor's officers and directors [A02281].

Six weeks later, on April 24, 2024, the Bankruptcy Court approved Debtor's Disclosure Statement and Plan of Reorganization (the "**Plan**") [A02281]. The Plan provided for payment in full of all allowed and unsubordinated general unsecured claims, but required that subordinated claims under Section 510(b) of the Bankruptcy Code be "cancelled, released, and extinguished" [A02069]. The Plan did not identify any particular claim as a subordinated claim or cause a specific claim to be subordinated by its very operation [A02056-2112].

On May 15, 2024, Denson timely filed a proof of claim against Debtor's estate, in which Denson asserted an unliquidated, general unsecured claim for (1) the advancement of fees and (2) indemnification under Delaware law, the Bylaws, and the Denson Indemnification Agreement (the "**Denson Proof of Claim**") [A00153-309]. In support of the Denson Proof of Claim, Denson attached numerous documents, including, but not limited to the Bylaws and the Denson Indemnification Agreement [*Id.*].

Two weeks later, on May 28, 2024, Schweller timely filed a proof of claim against Debtor's estate, in which Schweller asserted an unliquidated, general unsecured claim for (1) the advancement of fees and (2) indemnification under Delaware law, the Bylaws, and the Schweller Indemnification Agreement (the "**Schweller Proof of Claim**," along with the Denson Proof of Claim, the "**Proofs of Claim**") [A0001-152]. In support of the Schweller Proof of Claim, Schweller

attached numerous documents, including, but not limited to the Bylaws and the Schweller Indemnification Agreement [*Id.*].

On May 28, 2024, David Finkelstein, individually and on behalf of similarly-situated individuals (collectively, the "**Class Action Plaintiffs**") filed suit in the United States District Court for the Southern District of New York (the "**Class Action Complaint**") against Andrew Fox and the Officers (collectively, the "**Officer Defendants**"), captioned *Finkelstein v. Fox et al.*, Case No. 24 CV 04056 (the "**Class Action**"), alleging that the Officer Defendants violated Sections 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. § 78 (the "**Exchange Act**") [A00517-546]. Specifically, the Class Action Complaint alleges that the Officer Defendants failed to publicly disclose accurate information concerning: (1) Debtor's relationship with KORR Acquisitions Group, Inc. ("**KORR Acquisitions**"); (2) the control that KORR Acquisitions exercised over Debtor's assets; (3) the nature of the investments that KORR Acquisitions made on Debtor's behalf; and (4) the adequacy of Debtor's internal disclosure controls [*Id.*].

On June 26, 2024, AI Amped I, LLC, AI Amped II, LLC, Arena Origination Co., LLC, Arena Special Opportunities Fund, LP, Arena Special Opportunities Partners I, LP, and Mt. Whiteney Securities, LLC (collectively, the "**Arena Plaintiffs**") filed a complaint in the New York Supreme Court (the "**D&O Complaint**") against the Officer Defendants and Amy Hanson (collectively, the

"**Insider Defendants**"), captioned *AI Amped I, LLC, et al v. Hanson, et al.*, Index No. 653261/2024 (the "**New York Lawsuit**"), alleging claims for fraudulent inducement, negligent misrepresentation, and breach of fiduciary duty [A00550-590].[1]

On June 14, 2024, counsel for the Officers sent a letter to Debtor demanding indemnification and requesting an advancement of fees under Delaware law, the Bylaws, and the Indemnity Agreements relating to the Class Action [A01994-2026].

By letter, dated June 21, 2024, Debtor denied the Officers' demand for indemnity and an advance relating to the Class Action [A02035-36]. However, in doing so, Debtor failed to provide a basis for its denial of the Officers' demand under Delaware law, the Bylaws, and the Indemnity Agreements, including, but not limited to the standard of conduct determination required under Section 8 of the Indemnity Agreements [*Id.*].

Likewise, on July 10, 2024, counsel for the Officers sent a letter to Debtor demanding indemnification and requesting an advancement of fees under Delaware law, the Bylaws, and the Indemnity Agreements relating to the New York Lawsuit [A02030].

---

[1] As further described, *infra*, all claims sounding in fraud were subsequently removed from the New York Lawsuit in accordance with a Bankruptcy Court ruling that such claims had been released and could not be pursued.

By letter, dated July 11, 2024, Debtor denied the Officers' demand for indemnity and an advance relating to the New York Lawsuit [A02040]. Once again, Debtor failed to provide a basis for its denial of the Officers' demand under Delaware law, the Bylaws, and the Indemnity Agreements, including, but not limited to the standard of conduct determination required under Section 8 of the Indemnity Agreements [*Id*.].

To date, Debtor has not undertaken the standard of conduct determination required under Section 8 of the Indemnity Agreements in response to the Officers' demands for indemnity and an advance relating to either the Class Action or the New York Lawsuit despite its receipt of the Officers' written demands in Summer 2024. By operation of Sections 8(a) and 8(c) of the Indemnity Agreements, respectively, the Officers have satisfied the applicable standard of care and Debtor is required to indemnify the Officers for their 'Losses.'

On August 27, 2024, Debtor filed that certain Reorganized Debtor's First Omnibus (Substantive) Objection Seeking to (I) Reclassify the Purported Indemnification Claims as Section 510(b) Claims or (II) Disallow and Expunge the Purported Indemnification Claims on Non-Liability Grounds (the "**First Claim Objection**") [A00313-2042]. Debtor argued that the Proofs of Claim should be reclassified "as Section 510(b) Claims [under the Bankruptcy Code], which are classified in Class 5 in the Plan and discharged with zero recovery . . ." [A00316].

Alternatively, Debtor asserted that even if the Proofs of Claim do not fall under Section 510(b) of the Bankruptcy Code, the claims against Debtor's estate are impermissible under Delaware law [A00327-330].

That same day, Debtor filed that certain Third Omnibus (Non-Substantive) Objection Seeking to (I) Reclassify Shareholder Claims as Section 510(b) Claims and (II) Disallow and Expunge the (A) Duplicate Claims, (B) Amended or Superseded Claims, (C) Late Filed Claims, and (D) Section 502(e)(1) Claims (the "**Third Claim Objection**," along with the First Claim Objection, the "**Claim Objections**") [A02280].[2]

On August 30, 2024, the Officers filed that certain Motion of Craig Denson and Leah Schweller to Enforce the Chapter 11 Plan and Confirmation Order (the "**Motion to Enforce**"), in which the Officers argued that the Arena Plaintiffs filed the D&O Complaint in violation of the Plan [A02279-80, A02285-87].

On September 30, 2024, the Officers filed their opposition to the Claim Objections (the "**Opposition**"). The Officers challenged the Claim Objections on procedural grounds, in which Bankruptcy Rule 3007, in conjunction with Bankruptcy Rule 7001, required Debtor to seek subordination of the Proofs of Claim

[2] The First Claim Objection sought to reclassify the Proofs of Claim as a Section 510(b) Claims under the Plan and discharge the Proofs of Claim without recovery, or in the alternative, expunge the Proofs of Claim in their entirety. The Third Claim Objection sought to expunge the Proofs of Claim in their entirety. The Bankruptcy Court did not expunge the Proofs of Claim, but rather, reclassified the Proofs of Claim as Section 510(b) Claims under the Plan.

through an adversary proceeding, not a claim objection [A02046-47]. The Officers also argued that they were entitled to an advance of their fees and indemnification under the Bylaws, the Indemnity Agreements, and Delaware law [A02043-44, A02048-51].

On October 17, 2024, the Bankruptcy Court held oral argument on the Claim Objections [A02113]. In furtherance of the First Claim Objection, Debtor argued that the Proofs of Claim should be subordinated, because the Proofs of Claim "seek[] indemnification based on two litigations with former equity holders and noteholders that purchased stock or securities of the debtor, and the claims that are raised therein are the basis for why these parties are seeking indemnification" [A02137:4-8]. In other words, because the indemnification claims stem from lawsuits filed by shareholders, the indemnification claims automatically arose from the purchase or sale of Debtor's shares under Section 510(b) of the Bankruptcy Code, and thus, the Proofs of Claim should be subordinated [A02136-37].

On December 16, 2024, the Bankruptcy Court issued that certain Memorandum Opinion and Order relating to the Motion to Enforce, the First Claim Objection, and the Third Claim Objection ("**Memo. Op.**" or the "**Opinion**") [A02279-2302]. First, the Bankruptcy Court granted the Motion to Enforce, in

which it found that the Arena Plaintiffs violated the Plan[3] [A02286-88]. Second, the Bankruptcy Court overruled the Third Claim Objection on the basis that Debtor failed to satisfy its burden of proof as to each element of Section 502 of the Bankruptcy Code [A02294-96]. Finally, the Bankruptcy Court sustained the First Claim Objection on the basis that (a) the Officers did not plead a claim for advancement of their fees; and (b) the Proofs of Claim were subordinated under Section 510(b) of the Bankruptcy Code [A02289-2302]. Although the Bankruptcy Court did not address the merits of the Officers' indemnification claims, it found that the Officers' claims for indemnification were subordinated, because the claims possessed a causal relationship to the purchase or sale of Debtor's shares [A02295-97]. As a result of this finding, the Proofs of Claim were deemed subordinated claims under the terms and conditions of the Plan and cancelled, released, and extinguished.

On December 30, 2024, the Officers timely filed this appeal.

[3]On February 10, 2025, the Officers filed a second enforcement motion, the *Joint Second Motion of the D&O Parties to Enforce the Chapter 11 Plan, Confirmation Order, and Enforcement Decision* (the "Second Motion to Enforce") (D.I. 476) which resulted in an order, entered on April 15, 2025, enjoining the Arena Plaintiffs' pursuit of any claims sounding in fraud (the "Second Enforcement Order") (D.I. 504). Specifically, the Second Enforcement Order provided that the claims asserted in the first three causes of action in the New York Lawsuit (all for "Fraudulent Inducement and/or Misrepresentation") "were released," "are subject to the injunction under the Plan," and that "assertion of the Released Claims in the NY Complaint violated the injunction under the Plan but no determination has been made about whether such violation was intentional or unintentional[.]"

## **SUMMARY OF THE ARGUMENT**

The Court should reverse the order of the Bankruptcy Court sustaining the First Claim Objection. First, the Bankruptcy Court committed legal error by failing to overrule, or even address, the First Claim Objection based on Bankruptcy Rules 3007 and 7001, in which Debtor was required to seek subordination of the Proofs of Claim by adversary proceeding. This issue was preserved on appeal at A02046-47 and A02142-44. Second, the Bankruptcy Court committed legal error by finding that the Officers' indemnity claims arose from the purchase or sale of Debtor's shares, and as a result, were subordinated under Section 510(b) of the Bankruptcy Code. This issue was preserved on appeal at A02047-50, A02139-42, and A02142-42.

## **ARGUMENT**

### I. Standard of Review

Under 28 U.S.C. § 158, the Court possesses mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C § 158(a)(1). Sitting as an appellate court in bankruptcy matters, the Court "appl[ies] a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions." *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (quoting *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir. 1998)). Whether

a claim can be subordinated under Section 510(b) of the Bankruptcy Code is a question of law where, as here, there are no relevant factual disputes. *See In re Cybersight LLC*, Case No. 04-112-JJF, 2004 WL 2713098, at *2 (D. Del. Nov. 17, 2004) (affirming the bankruptcy court's ruling that a claim is not subject to subordination where the claimant's equity stake extinguished pre-petition, and the claimant was no longer able to participate in the benefits and risks associated with being an equity holder of the debtor); *In re DirecTV Latin Am., LLC*, Case No. 03-981-SLR, 2004 WL 302303, at *3 (D. Del. Feb. 4, 2004) (reversing the bankruptcy court's subordination of a claim where the claimant was excused from capital contributions required of other LLC participants and its interest was subject to certain restrictions on transferability).

## II. Legal Argument

"A proof of claim is a written statement of a creditor's claim." FED. R. BANKR. P. 3001(a). Under Bankruptcy Rule 3001(f), a properly-filed proof of claim "is prima facie evidence of the claim's validity and amount." FED. R. BANKR. P. 3001(f). The Bankruptcy Code states that a proof of claim "is deemed allowed, unless a party in interest, . . . objects." 11 U.S.C. § 502(a). Section 502(b) of the Bankruptcy Code sets forth the various grounds for objection to a proof of claim, in which the bankruptcy court "shall determine the amount of such claim . . . and shall allow such claim in such amount . . ." subject to the court's resolution of the grounds for the

objection. 11 U.S.C. § 502(b). Section 502 of the Bankruptcy Code does not list, cite, or make reference to Section 510 of the Bankruptcy Code. *See* 11 U.S.C. § 502. If a party in interest files an objection, the objecting party bears "the burden of presenting evidence sufficient to overcome the prima facie validity of the claim." 4 COLLIER ON BANKRUPTCY § 501.02[d] (16th ed. 2025). Should the objecting party overcome the prima facie validity of the claim, the burden shifts to the claimant to demonstrate its allowance. *See id.*

### A. The Bankruptcy Rules Required Debtor To Seek Subordination Of The Proofs Of Claim By Adversary Complaint.

The Bankruptcy Court committed legal error by failing to overrule the First Claim Objection based on Bankruptcy Rules 3007 and 7001. Because the First Claim Objection sought to subordinate the Proofs of Claim under Section 510(b) of the Bankruptcy Code, the Bankruptcy Rules required Debtor to proceed by adversary complaint. Debtor pursued subordination of the Proofs of Claim by claim objection in violation of the Bankruptcy Rules, in which the violation should have resulted in the Bankruptcy Court overruling the First Claim Objection with leave to commence an adversary proceeding. The Bankruptcy Court's failure to enforce the Bankruptcy Rules constitutes legal error.

Bankruptcy Rule 3007(b) states:

> Demanding Relief That Requires an Adversary Proceeding Not Permitted. In objecting to a claim, a party in interest must not include a



ME1 52945329v.1

> demand for a type of relief specified in Rule 7001 but may include the objection in an adversary proceeding.

FED. R. BANKR. P. 3007(b). Bankruptcy Rule 7001 states an adversary proceeding includes "a proceeding to subordinate an allowed claim or interest—except when subordination is provided in a Chapter 9, 11, 12, or 13 plan[.]" FED. R. BANKR. P. 7001(h).

The Bankruptcy Rules required Debtor to seek subordination of the Proofs of Claim under Section 510(b) of the Bankruptcy Code through an adversary proceeding. *See generally In re GSE Envir., Inc.*, Case No. 16-616, 2017 WL 5490833 (D. Del. Nov. 15, 2007). Bankruptcy Rule 3007(b) is unambiguous, and when read in conjunction with Bankruptcy Rule 7001, which Bankruptcy Rule 3007(b) expressly requires, the First Claim Objection is barred. Section 502(b) of the Bankruptcy Code provides further legal support for reversal of the Opinion, in which this Section lists the various bases for filing a claim objection, but fails to make any reference to subordination or Section 510(b) of the Bankruptcy Code. *See* 11 U.S.C. § 502. Finally, the Plan's definition of 'Adversary Action' eliminates any specter of doubt as to Debtor's violation where the Plan defines this term as "any and all avoidance, recovery, ***subordination***, or other claims, actions or remedies that may be brought by or on behalf of the Debtor . . ., including actions or remedies under sections 502, ***510***, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code" [A02076].

The Bankruptcy Rules, the Bankruptcy Code, and the Plan demonstrate the Bankruptcy Court's legal error. Debtor attempts to evade its mistake by arguing that the Plan provided a class of subordinated claims, and thus, Bankruptcy Rule 7001 does not apply. *See generally In re Wash. Mut., Inc.*, 462 B.R. 137 (Bankr. D. Del. 2011). However, the Plan did not subordinate a specific creditor's claim or identify a particular set of claims as falling within a class of subordinated claims [A02056-2112]. Rather, the Plan described a generic class of claims for 'Section 510(b) Claims' and 'Other Subordinated Claims' to be separately decided by the Bankruptcy Court [A02088]. To the extent that the Plan sought to subordinate the Officers' claims, the Officers would have possessed an opportunity to take discovery during the plan confirmation process similar to an adversary proceeding, like requests for documents, subpoenas, and depositions.[4] Here, the Plan did not provide for the subordination of the Officers' claims as required under Bankruptcy Rule 7001(h). Moreover, a number of bankruptcy court decisions lend further support for the Officers' construction of the Bankruptcy Rules and the Bankruptcy Code requiring an adversary proceeding. *See, e.g.*, *In re Brown*, Case No. 18-10617, 2023 WL 6051957, at *13 (Bankr. S.D.N.Y. Sept. 15, 2023) (denying trustee's request to subordinate claim based on the failure to commence an adversary proceeding); *In re*

[4] The Plan does not expressly address the Officers' claims, and thus, there was no reason or basis to take discovery through the plan confirmation process.

*Peck Jeep Eagle Inc.*, Case No. 17-0013 8-LA7, 2021 WL 1511640, at *2-3 (Bankr. S.D. Cal. Apr. 15, 2021) (finding that an adversary proceeding is the appropriate vehicle for subordination of a claim); *In re J.S. II, L.L.C.*, 389 B.R. 570, 587-88 (Bankr. N.D. Ill. 2008) (finding that a claim for equitable subordination must be brought by adversary proceeding); *In re Protarga, Inc.*, Case No. 03-12564, 2004 WL 1906145, at *3 (Bankr. D. Del. Aug. 25, 2004) (same). *See also In re USA Commercial Mortg. Co.*, 377 B.R. 608, 620-21 (9th Cir. B.A.P. 2007); *In re Arcapita Bank B.S.C.(c)*, Case No. 12-11076, 2014 WL 2109931, at *5 n. 4 (Bankr. S.D.N.Y. May 20, 2014). Accordingly, Debtor's argument fails.

The burden of proving that a claim constituted a '510(b) Claim' or 'Other Substituted Claim' under the Plan lies with Debtor, in which Bankruptcy Rules 3007 and 7001 as well as the Plan required Debtor to seek subordination by adversary proceeding. Any other conclusion runs afoul of the express language of Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3007(b) and 7001(h), and the Plan. *See generally In re F-Squared Inv. Mgmt. LLC*, Case No. 18-1214, 2019 WL 1417464, at *6-7 (D. Del. Mar. 29, 2019) (employing a plain language reading of the Bankruptcy Rules). Accordingly, this Court should reverse and remand this proceeding to the Bankruptcy Court.

### B. The Indemnity Claims Do Not Arise From The Sale Or Purchase Of Debtor's Shares.

The Bankruptcy Court committed legal error by concluding that the Officers' claims for indemnification arose from the sale or purchase of Debtor's shares, and as result thereof, were subordinated under Section 510(b) of the Bankruptcy Code. The Bankruptcy Court's conclusion reflected a misapplication of the law, which not only violated the statute's express language and purpose, but also eviscerated the ability of an officer or director of an insolvent company to obtain indemnification for any losses, fees, or costs relating to a shareholder complaint.

This appeal concerns the interpretation of Section 510(b) of the Bankruptcy Code. Statutory construction "begin[s] . . . with the text of the statute." *In re Telegroup, Inc.*, 281 F.3d 133, 137 (3d Cir. 2002). If the statute is unambiguous, "[t]he inquiry must cease" and the court shall give effect to the text's plain meaning. *Id*. However, where the statute is ambiguous, the court must turn to the legislative history and purpose to ascertain the statutory meaning. *See id*.

Section 510(b) of the Bankruptcy Code provides for the mandatory subordination of specific types of claims. *See* 11 U.S.C. § 510(b). The statute states:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest

> represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

*Id*. The Third Circuit has held that the phrase, "arising from," is ambiguous. *In re Telegroup, Inc.*, 281 F.3d at 138 (citing 11 U.S.C. § 510(b)). Under the rules of statutory construction, the Third Circuit consulted the legislative history and purpose in order to ascertain Section 510(b)'s meaning. *See id.*

Congress enacted Section 510(b) of the Bankruptcy Code to "prevent[] shareholders from recovering their equity investment" in circumvention of the absolute priority rule. *See In re RTI Holding Co., LLC*, Case No. 20-12456, 2021 WL 3409802, at *4 (Bankr. D. Del. Aug. 4, 2021). Attempting to resolve the statutory ambiguity, the Third Circuit examined both the House Report on the 1978 Bankruptcy Revisions and the Report of the Commission on Judiciary, Bankruptcy Law Revision and concluded that Congress sought to address "[a] difficult policy question . . . concern[ing] the relative status of a security holder who seeks to rescind his purchase of securities or to sue for damages based on such a purchase[.] Should he be treated as a general unsecured creditor based on his tort claim for rescission, or should his claim be subordinated?" *Id.* at 138 (quoting Report of the Committee on the Judiciary, Bankruptcy Law Revision, H.R. Rep. No. 95–595, at 194 (1977), U.S. Code Cong. & Admin. News at 5963, 6154). When enacting Section 510(b) of the Bankruptcy Code, "Congress relied heavily on a law review

article written by Professors John J. Slain and Homer Kripke . . . ." *Id.* (citing John J. Slain and Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U. L.Rev. 261 (1973)). Professors Slain and Kripke justified subordination of *shareholder* claims on the following policy grounds:

> '(1) the dissimilar risk and return expectation of shareholders and creditors,' referred to as the 'risk-allocation rationale'; and '(2) the reliance of creditors on the equity cushion provided by shareholder investment,' referred to as the 'equity cushion rationale.'

*In re Lehman Bros. Inc.*, 808 F.3d 942, 949 (2d Cir. 2015) (quoting *In re Mid Diversified, Inc.*, 461 F.3d 251, 256, 259 (2d Cir. 2006)). *See also In re Telegroup, Inc.*, 281 F.3d at 138-39 (quoting Slain & Kripke, *supra*, at 261). Although the statutory text and legislative history fail to delineate any boundaries, the Third Circuit held that Section 510(b) of the Bankruptcy Code "***intended to prevent disappointed shareholders from recovering the value of their investmen***t by filing bankruptcy claims predicated on the issuer's unlawful conduct at the time of issuance, when the shareholders assumed the risk of business failure by investing in equity rather than debt instruments." *Id.* at 141 (citing Slain & Kripke, *supra*, at 261, 267-68) (emphasis added). "Section 510(b) thus represents a Congressional judgment that, ***as between shareholders and general unsecured creditors***, it is shareholders who should bear the risk of illegality in the issuance of stock in the

event the issuer enters bankruptcy." *Id.* (emphasis added). Accordingly, a claim arises out of the purchase or sale of securities under Section 510(b) of the Bankruptcy Code if it possesses "some nexus or causal relationship between the claim and the sale of the security[.]" *Id.* at 138. *See also In re CIT Grp. Inc.*, 460 B.R. 633, 639 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 Fed. Appx. 393 (2d Cir. 2012) ("[T]he existence of a mere 'connection' between the claim and the purchase or sale of a security is not enough to support a finding that the claim 'arises from' the purchase or sale and should be subordinated unless the purposes of the statute would be served thereby."). However, as the Third Circuit noted, Section "510(b)'s language alone provides little guidance in delineating the precise scope of the required nexus." *In re Telegroup, Inc.*, 281 F.3d at 138.

Since the statute's enactment, the courts in the Third Circuit have frequently subrogated the claims of ***shareholders*** under Section 510(b) of the Bankruptcy Code. *See, e.g.*, *In re Int'l Wireless Commc'ns Holdings, Inc.*, 279 B.R. 463 (D. Del. 2002), *aff'd*, 68 Fed. Appx. 275 (3d Cir. 2003); *In re GSE Envir., Inc.*, 2017 WL 5490833; *In re Kaiser Grp. Int'l, Inc.*, 260 B.R. 684 (Bankr. D. Del. 2001), *aff'd*, Case No. 00-2263, 2001 WL 34368405 (D. Del. Nov. 29, 2001); *In re RTI Holding Co., LLC*, 2021 WL 3409802; *In re Wash. Mut., Inc.*, 464 B.R. 656, 669-70 (Bankr. D. 2012); *In re Peregrine Sys., Inc.*, Case No. 02-12740, 2004 WL 716714 (Bankr. D. Del. Mar. 30, 2004). In such instances, the courts have construed Section 510(b) of the

Bankruptcy Code to subordinate a broad swathe of ***shareholder*** claims in order to prevent ***shareholders*** from subverting the priority rule. *See, e.g., In re Int'l Wireless Commc'ns Holdings, Inc.*, 68 Fed. Appx. 275, 278 (3d Cir. 2003) (affirming subordination of shareholder claims arising out of a share purchase agreement); *In re RTI Holding Co., LLC*, 2021 WL 3409802, at *4-5 (subordinating claims of shareholders arising out of a merger and subsequent appraisal action); *In re Wash. Mut., Inc.*, 464 B.R. at 669-70 (subordinating claims of shareholders arising out of the debtor's breach of a warrant agreement).

Conversely, the courts have rarely addressed whether the claims of ***officers and directors*** for indemnification may be subordinated under Section 510(b) of the Bankruptcy Code. Neither the Third Circuit Court of Appeals[5] nor the district courts in this Circuit[6] are believed to have addressed this very issue. The only known decisions on the matter are two non-precedential rulings. *See In re Touch Am. Holdings, Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008); *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 824 (Bankr. D. Del. 1999).[7]

---

[5] Upon information and belief, but for the Ninth Circuit Court of Appeals' decision in *In re Christian Life Ctr.*, 821 F.2d 1370 (9th Cir. 1987) rejecting subordination of an officer's indemnity claim for expenses based on a prior version of Section 510(b) of the Bankruptcy Code, no U.S. Circuit Court of Appeals has decided the issue before the Court.

[6] Upon information and belief, no U.S. District Court has addressed the issue before the Court.

[7] Of note, in 1991, the United States Bankruptcy Court for the District of New Hampshire subordinated the subrogation claims of the insurer under Section 510(b) of the Bankruptcy Code. *See In re Pub. Serv. Co. of New Hampshire*, 129 B.R. 3 (Bankr. D. N.H. 1991).

In *Mid-American Waste*, which preceded the Third Circuit's precedential decision in *Telegroup*, the bankruptcy court subordinated the indemnification claims of the debtor's former officers and directors under Section 510(b) of the Bankruptcy Code. *See In re Mid-American Waste Sys., Inc.*, 228 B.R. at 824. Contrary to the subsequent precedential holding in *Telegroup*, the *Mid-American Waste* court found that Section 510(b) of the Bankruptcy Code was unambiguous. *Compare In re Telegroup, Inc.*, 281 F.3d at 138; *In re Mid-American Waste Sys., Inc.*, 228 B.R. at 829. The bankruptcy court's analysis is further undermined by its use of legislative silence as a sword to reject the claimants' arguments and a shield to substantiate its finding. *See id.* at 826 (finding that the absence of a legislative history did not support the claimant's construction, but rather, allowed for an expansive interpretation of the statute to include officer and director claims). Additionally, the factual distinctions between *Mid-American Waste* and this case are significant. Unlike this case, the officers and directors' indemnification claims in *Mid-American Waste* were predicated on language in the debtor's certificate of incorporation. *See id.* at 821. Here, in addition to the Bylaws, the Officers possess a separate and private right to indemnification under the Indemnity Agreements. The Officers' contractual rights are noteworthy in light of the *Mid-American Waste* court's reasoning that contractual claims may "not [fall] within the scope of § 510(b)[.]" *Id.* at 826.

In *Touch Am. Holdings,* the bankruptcy court granted summary judgment in favor of subordinating the officers' and directors' claims for indemnification arising out of an employee stock ownership plan. *See In re Touch Am. Holdings, Inc.*, 381 B.R. at 104-05. Ignoring the substance of the officers' and directors' indemnity claims, and failing to apply the precedential "but for" analysis, the bankruptcy court focused on the relationship of the underlying litigation to the sale of securities, in which the court found that "the gist of the [underlying] litigation [was] to recover damages based upon the lost value of the stock." *See id.* at 105. In light of the shareholder plaintiffs' damages, the court equated an officer and director claim for indemnification to a securities claim for diminished value subject to Section 510(b) of the Bankruptcy Code. *See id.* As a result, the *Am. Touch Holdings* court inexplicably found that officers and directors assume "the risk and return expectations of a shareholder, rather than a creditor." *Id.* at 105 (quoting *In re Mid Diversified, Inc.*, 461 F.3d at 256). Notably, the *Am. Touch Holdings* court neither referenced nor analyzed an officer's independent right to indemnity by separate agreement.

Although Section 510(b) of the Bankruptcy Code does not expressly limit its application to shareholder claims, Congress did not intend for the statute to

subordinate an officer and director's independent, contractual right to indemnity.[8] *See In re CIT Grp. Inc.*, 460 B.R. at 639; *In re Mid-American Waste, Inc.*, 228 B.R. at 826. Acknowledging "the increased risk of litigation" and "the need to provide [officers] with substantial protection against personal liability," Debtor and the Officers voluntarily entered into the Indemnity Agreements [A00139-151; A00292-309]. The Indemnity Agreements provided a mechanism for indemnifying the Officers for their losses, fees, and out-of-pocket expenses. Based on the record on appeal, the Officers are entitled to mandatory indemnification under Sections 8(a) and 8(c) of the Indemnity Agreements. Furthermore, the record is devoid of any assumption of risk by the Officers synonymous with a shareholder's equity interest or an exchange of consideration by which the Officers agreed to accept less protection. Quite contrary, the Indemnity Agreements evidence an intent by the Officers and an express acknowledgment by Debtor that the Officers intended to limit, if not eliminate their risk. This evidence dispels the notion that subordination of the Officers' contractual claims serves either of the stated purposes for Section 510(b) of the Bankruptcy Code, in which the Officers have not assumed the risk of loss, the market has not allocated risk to the Officers, and the Officers did not rely on a purported equity cushion when accepting their management position. *See In re*

[8] To the extent that Debtors assert that the Indemnity Agreements were, or even could be, rejected under Section 365 of the Bankruptcy Code, which the Officers dispute, the Proofs of Claim were timely submitted to preserve their right to rejection damages, if applicable.

*CIT Grp. Inc.*, 460 B.R. at 641 ("[T]here is nothing inherent in an interaffiliate tax agreement that would justify treating Tyco's interest like equity."); *In re Cybersight LLC*, 2004 WL 2713098, at *3-4 (affirming bankruptcy court's ruling that claimant's conversion of equity interest into a debt obligation prevented claimant from "participat[ing] in the benefits and risks associated with being equity holders"); *In re Nationsrent, Inc.*, 381 B.R. 83, 92 (Bankr. D. Del. 2008) (finding that the claimants "were not investors, nor were they speculating on the success of the [d]ebtors. Instead, the Make Whole Amounts . . . provide the Seller Claimants with their bargained for sales price."); *In re Mobil Tool Intern., Inc.*, 306 B.R. 778, 782 (Bankr. D. Del. 2004) (finding that the defendants' acceptance of a promissory note in exchange for their shares in the debtor "removed the variable nature of their investment and placed themselves in the position of general creditors"); *In re DirecTV Latin Am., LLC*, 2004 WL 302303, at *4-5 (reversing bankruptcy court's subordination of claim arising from put option where the claimant did not contract for the risk). *See also Stucki v. Orwig*, Case No. 3:12-cv-1064, 2013 WL 1499377, at *6 (N.D. Tex. Apr. 12, 2013) (finding that payments owed shareholders under a settlement agreement were "too attenuated to bring it within § 510(b)'s reach"). The District of Delaware has expressed reservation with subordinating claims that do not "further[] the anti-bootstrapping intent of § 510(b) so that those who have [not] contractually accepted the risk of business failure, bear that burden in bankruptcy."

*In re DirecTV Latin Am., LLC*, 2004 WL 302303, at *3. In this instance, the Officers' indemnity claims bear resemblance to a creditor, which "[e]ven if the business prospers, [they] anticipate[] no more than repayment[,]" as opposed to a shareholder "who enjoy[s] the right to unlimited residual profits from an enterprise . . . [and] bear[s] the greater risk from insolvency." *In re CIT Grp. Inc.*, 460 B.R. at 640.

The Bankruptcy Court committed further legal error by failing to analyze the Officers' contractual rights to indemnification in light of the mandatory indemnity language in the Indemnity Agreements as well as the claims asserted in the Class Action Complaint and the D&O Complaint in order to ascertain whether there is a causal relationship between the Officers' contractual rights and the sale or rescission of securities. *See In re Telegroup, Inc.*, 281 F.3d at 138. The fact remains that the Officers' private contractual rights exist – and would continue to exist – regardless of whether securities were sold or rescinded, and thus, the 'but for' test endorsed by the Third Circuit in *Telegroup* and *Int'l Wireless Commc'ns* has not been met. *See In re Int'l Wireless Commc'ns Holdings, Inc.*, 68 Fed. Appx. at 278; *In re Telegroup, Inc.*, 281 F.3d at 137-38. *See also In re RTI Holding Co., LLC*, 2021 WL 3409802, at *4-5; *In re Spectrum Alliance, LP*, 609 B.R. 11 (E.D. Pa. 2019) (holding that "the 'but-for causal connection between the Fund's claim and its purchase of Spectrum shares weighs in favor of subordination"); *In re Response U.S.A., Inc.*, 288 B.R. 88,

94 (D. N.J. 2003) (holding that the "claims relate directly to the Stock Purchase Agreement as they would not exist but for the Stock Purchase Agreement").

Additionally, the Bankruptcy Court and Debtor fail to provide new or different legal reasoning for the mandatory subordination of officer and director indemnity claims. Given the ambiguity in the statute, *see In re Telegroup, Inc.*, 281 F.3d at 137, the Bankruptcy Court erred in failing to construe Section 510(b) consistent with its legislative history and purpose. The Opinion is devoid of any legal analysis concerning the Officers' purported assumption of the risk, the Officers' purported reliance on an equity cushion, or the Officers' purported violation of Congress's anti-bootstrapping concerns. *See id.* at 137-39. This omission is glaring in light of the *Telegroup* analysis and Debtor's request for the draconian remedy of mandatory subordination. Both the Bankruptcy Court and Debtor construe Section 510(b) in a manner that fails to effectuate Congressional intent, and as a result, the Bankruptcy Court's ruling will have a chilling effect on the willingness of individuals to serve as officers' and directors' attorneys to oversee securities transactions, and financial professionals to handle securities offerings. Should the courts impermissibly expand the scope of Section 510(b) in concluding that these types of professionals have assumed the risk of non-payment and potential liability arising out of a securities offering, as Debtor advocates, the price to be paid by

distressed companies for these individuals' services will exceed their limited means and deprive distressed companies of expert guidance.

## CONCLUSION

Appellants Craig Denson and Leah Schweller request that this Honorable Court reverse the Bankruptcy Court's decision, overrule the First Claim Objection, and remand the case to the Bankruptcy Court for further proceedings consistent herewith.

Dated: April 28, 2025
Wilmington, Delaware

**McCARTER & ENGLISH LLP**

/s/ *Kate R. Buck*
Kate R. Buck (DE# 5140)
Matthew J. Rifino (DE# 4749)
Renaissance Centre
405 N. King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
Kbuck@mccarter.com
Mrifino@mccarter.com

*Attorneys for Appellants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re:<br><br>CHARGE ENTERPRISES, INC.,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy Case No. 24-10349 (TMH)<br><br>Bankr. BAP No. 24-0081 |
| CRAIG DENSON and<br>LEAH SCHWELLER,<br><br>Appellants,<br><br>v.<br><br>CHARGE ENTERPRISES, INC.,<br><br>Appellee. | Case No. 24-cv-01426 (MN) |

**CERTIFICATION OF COMPLIANCE WITH FED. R. BANKR. P. 8015**

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015 because this document contains approximately 6,947 words based on the calculation of the Microsoft Word software.

**McCARTER & ENGLISH LLP**

/s/ *Kate R. Buck*
Kate R. Buck (DE# 5140)

*Attorneys for Appellants*

Dated: April 28, 2025