**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>CHARGE ENTERPRISES,<br><br>Reorganized Debtor.[1] | ) | Chapter 11<br>Case No. 24-10349 (TMH) |
| CRAIG DENSON and,<br>LEAH SCHWELLER<br>Appellants,<br>v.<br><br>CHARGE ENTERPRISES, INC.,<br><br>Appellee. | ) | Civil Case No. 1:24-cv-01426-MN<br><br>Appeal from the United States Bankruptcy Court for the District of Delaware |

**APPELLEE CHARGE ENTERPRISES, INC.'S RESPONSE BRIEF TO APPELLANTS CRAIG DENSON AND LEAH SCHWELLER'S OPENING BRIEF ON APPEAL**

[1] The last four digits of the Reorganized Debtor's federal tax identification number are 1969. The Reorganized Debtor's mailing address for purposes of the chapter 11 case is 125 Park Avenue, 25th Floor, New York, New York, 10017.

**WHITE & CASE LLP**
Harrison Denman
Laura Garr
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: harrison.denman@whitecase.com
laura.garr@whitecase.com

-and-

Trudy Smith
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Email: trudy.smith@whitecase.com

*Counsel for the Appellees*

**TROUTMAN PEPPER LOCKE LLP**
Douglas D. Herrmann (No. 4872)
Kenneth A. Listwak (No. 6300)
Hercules Plaza
1313 North Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 777-6500
Email: douglas.herrmann@troutman.com
ken.listwak@troutman.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| CHARGE ENTERPRISES, INC., | ) | Chapter 11<br>Case No. 24-10349 (TMH) |
| Reorganized Debtor.[1] | ) | |
| Craig Denson and Leah Schweller, | ) | |
| Appellants, | ) | |
| v. | ) | C.A. No. 24-01426 (MN) |
| Charge Enterprises, Inc. | ) | |
| Appellee. | ) | |

**APPELLEE'S CORPORATE DISCLOSURE STATEMENT PURSUANT TO RULE 7.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 8012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Rule 8012 of the Federal Rules of Bankruptcy Procedure, appellee Charge Enterprises, Inc. ("**Charge**" or the "**Appellee**") states as follows:

[1] The last four digits of the Reorganized Debtor's federal tax identification number is 1969. The Reorganized Debtor's mailing address for purposes of the Chapter 11 Case is 125 Park Avenue, 25th Floor, New York, New York 10017.

1. Charge's equity is owned on a percentage basis as follows:

    a. AI AMPED I, LLC: 62.46%

    b. AI AMPED II, LLC: 32.54%

    c. ICG CHARGE ME LLC: 5%

2. No publicly held corporation owns 10% or more of the stock of Charge.

*[Signature Page Follows]*

Dated: February 28, 2025
Wilmington, Delaware

Respectfully submitted,

By: */s/ Kenneth A. Listwak*

Douglas D. Herrmann (No. 4872)
Kenneth A. Listwak (No. 6300)
**TROUTMAN PEPPER LOCKE LLP**
Hercules Plaza, Suite 1000
1313 North Market Street, P.O. Box 1709
Wilmington, DE 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
Email: douglas.herrmann@troutman.com
ken.listwak@troutman.com

-and-

Harrison Denman (admitted *pro hac vice*)
Laura Garr (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200
Facsimile: 212-354-8113
Email: harrison.denman@whitecase.com
laura.garr@whitecase.com

-and-

Trudy Smith (admitted *pro hac vice*)
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
Telephone: 302-371-2700
Facsimile: 205-358-5744
Email: trudy.smith@whitecase.com

*Counsel to the Appellee*



308929815v1

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF ISSUES PRESENTED .......... 1

STANDARD OF REVIEW .......... 2

STATEMENT OF THE CASE .......... 3

- I. Charge's Chapter 11 Plan Contains a Separate Class of Section 510(b) Claims .......... 3
- II. The Pending Litigations Against Appellants Relate to the Purchase and Sale of Charge's Securities .......... 5
- III. Charge Objects to Appellants' Indemnification Claims .......... 7
- IV. The Bankruptcy Court Grants the First Omnibus Objection and Subordinates the Indemnification Claims .......... 8
- V. Appellants Appeal Subordination Ruling .......... 9

SUMMARY OF THE ARGUMENT .......... 9

ARGUMENT .......... 11

- I. The Bankruptcy Court Properly Granted the Claim Objection to Reclassify the Indemnification Claims as Section 510(b) Claims .......... 11
- II. Appellants Waived the Merits of the Section 510(b) Issue on Appeal By Failing to Develop the Argument in the Bankruptcy Court. .......... 14
- III. This Court Should Affirm the Bankruptcy Court's Decision to Subordinate the Indemnification Claims. .......... 15
  - A. There Is No Exception for Contract Claims in Section 510(b). .......... 17

B. The Legislative Record Supports the Bankruptcy Court's Ruling. ........ 20

C. Courts Applying Section 510(b) to Contract Claims Routinely Subordinate Such Claims When There Is a Causal Relationship to the Purchase or Sale of the Debtor's Securities. ........ 24

IV. The Indemnification Claims was Properly Canceled, Released, and Extinguished Under the Plan. ........ 30

CONCLUSION ........ 30

CERTIFICATE OF COMPLIANCE ........ 33

CERTIFICATE OF SERVICE ........ 33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barna v. Board of School Directors of Panther Valley School District*,
877 F.3d 136 (3d Cir. 2017) ....................................................................15

*Baroda Hill Invs. v. Telegroup, Inc.* (*In re Telegroup, Inc.*),
281 F.3d 133 (3d Cir. 2002) ...............................................................passim

*Betacom of Phoenix*,
240 F.3d 823 (9th Cir. 2001) ....................................................................26

*Buncher Co. v. GenFarm*,
229 F.3d 245 (3d Cir. 2000) ....................................................................15

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000)..........................................................................................20

*In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025 (Del. Ch. 2015), *as revised* (May 21, 2015), *judgment entered sub nom. In re Activision Blizzard, Inc. Stockholder Litig.*, No. CV 8885-VCL, 2015 WL 2415559 (Del. Ch. May 20, 2015) ..........................................................................................28

*In re Arcapita Bank B.S.C.(c)*,
No. 12-11076 (SHL), 2014 WL 2109931 (Bankr. S.D.N.Y. May 20, 2014).....14

*In re CIT Grp. Inc.*,
460 B.R. 633 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 F. App'x 393 (2d Cir. 2012) ..........................................................................................24, 25

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ....................................................................20

*In re Enron Corp. Secs.*,
Nos. 1446, H-01-3624, H-05-0774, 2005 U.S. Dist. LEXIS 34029 (S.D. Tex. Dec. 15, 2005)..........................................................................................30

*In re Hagerstown Block Co.*,
570 B.R. 494 (Bankr. D. Md. 2017) ..........................................................29



132773612

*In re Imerys Talc Am., Inc.*,
38 F.4th 361 (3d Cir. 2022) ....................................................................................2

*In re Int'l Wireless Communications Holdings, Inc.*,
257 B.R. 739 (Bankr. D. Del. 2001), *aff'd,* 279 B.R. 463 (D.Del.2002), *aff'd,*
2003 WL 21466898 (3d Cir. 2003) ...........................................................................26

*In re J.S. II, L.L.C.*,
389 B.R. 570 (Bankr. N.D. Ill. 2008) .......................................................................14

*In re Jacom Computer Servs., Inc.*,
280 B.R. 570 (Bankr. S.D.N.Y. 2002)..................................................25, 26, 29

*In re Lehman Bros. Inc.*,
808 F.3d 942 (2d Cir. 2015) ..........................................................21, 22, 26, 29

*In re Mid-Am. Waste Sys., Inc.*,
228 B.R. 816 (Bankr. D. Del. 1999).......................................................passim

*In re Odyssey Contracting Corp.*,
944 F.3d 483 (3d Cir. 2019) ....................................................................................14

*In re Peck Jeep Eagle Inc.*,
No. BR 17-0013 8-LA7, 2021 WL 1511640 (Bankr. S.D. Cal. Apr. 15, 2021) 14

*In re Phila. Newspaper, LLC*,
599 F.3d 298 (3d Cir. 2010) ....................................................................................20

*In re Protarga, Inc.*,
No. 03-12564 (PJW), 2004 WL 1906145 (Bankr. D. Del. Aug. 25, 2004) .......14

*In re Public Service Co. of New Hampshire*,
129 B.R. 3 (Bankr. D.N.H. 1991)..............................................................................30

*In re SandRidge Energy, Inc.*,
No. 16-32488, 2025 Bankr. LEXIS 1267 (Bankr. S.D. Tex. Apr. 17, 2025).....30

*In re Touch Am. Holdings, Inc.*,
381 B.R. 95 (Bankr. D. Del. 2008)..................................................12, 21, 29

*In re USA Com. Mortg. Co.*,
377 B.R. 608 (B.A.P. 9th Cir. 2007) ........................................................................13

*In re Walnut Equip. Leasing Co., Inc.*,
No. 97-19699DWS, 1999 WL 1271762 (Bankr. E.D. Pa. Dec. 28, 1999) ..19, 28

*In re Washington Mut., Inc.*,
464 B.R. 656 (Bankr. D. Del. 2012)....................................................19

*In re Washington Mutual, Inc.*,
462 B.R. 137 (Bankr. D. Del. 2011)....................................................11

*Meridian Bank v. Alten*,
958 F.2d 1226 (3d Cir. 1992) ..............................................................3

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
461 F.3d 251 (2d Cir. 2006) ..............................................................28

*Rubinstein v. Yehuda*,
38 F.4th 982 (11th Cir. 2022) ............................................................15

**STATUTES AND RULES**

8 Del. C. § 145(a)...........................................................................4

11 U.S.C. § 502 ..............................................................................12

11 U.S.C. § 510 ..........................................................................passim

15 U.S.C. § 78 ..................................................................................5

28 U.S.C. § 157 ................................................................................1

28 U.S.C. § 158(a)(1)........................................................................1

28 U.S.C. § 1334 ..............................................................................1

1934 Securities Exchange Act §§ 10(b) and 20(a) ..........................5, 22

Fed. R. Bankr. P. 3007(b) ................................................................11

Fed. R. Bankr. P. 7001(d) ..........................................................10, 11

Fed. R. Bankr. P. 8014 .......................................................................1

## MISCELLANEOUS

*4 Collier on Bankruptcy* (16th 2026) ....................................................................18

## INTRODUCTION

Pursuant to Rule 8014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Appellee Charge Enterprises, Inc. ("**Charge**" or the "**Reorganized Debtor**") submits this response brief to Appellants Craig Denson's and Leah Schweller's *Opening Brief on Appeal* (the "**Brief**") (Dist. D.I. 20).

## JURISDICTIONAL STATEMENT

The issues on appeal arise from the claims resolution process in Charge's chapter 11 case pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Bankruptcy Court had subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This Court has appellate jurisdiction over the Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's Memorandum Opinion and Order was a final judgment, and Appellants noticed their appeal on December 30, 2024. (App. A000001–024; A002262–2291). *See In re Charge Enters., Inc.*, No. 24-10349 (TMH), 2024 WL 5131141 (Bankr. D. Del. Dec. 16, 2024).

## STATEMENT OF ISSUES PRESENTED

1. Whether Appellants waived for appellate purposes the issue of whether section 510(b) of the 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") requires subordination of Appellants' Indemnification Claims (defined below) when those

claims arose from and were causally connected to the purchase or sale of Charge's securities regardless of the fact that such claims are based on a contract.

2. Whether the Bankruptcy Court erred in granting Charge's request to reclassify the Indemnification Claims as Section 510(b) Claims (defined below) pursuant to the First Claims Objection (defined below) when the Plan (defined below) contemplates a class of Section 510(b) Claims.

3. Whether the Bankruptcy Court correctly held that section 510(b) of the Bankruptcy Code requires subordination of Appellants' Indemnification Claims when those claims arose from and were causally connected to the purchase or sale of Charge's securities regardless of the fact that such claims are based on a contract.

4. Whether the Bankruptcy Court correctly canceled, released, and extinguished Appellants' subordinated Indemnification Claims under the Plan (defined below), which classifies all section 510(b) claims in Class 5 (defined below) and provides no recovery.

## STANDARD OF REVIEW

A district court considering an appeal of a bankruptcy court order "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (internal citation omitted). An appeal that raises both legal and factual issues requires the district court to "break down mixed

questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (internal citation omitted).

## STATEMENT OF THE CASE

### I. Charge's Chapter 11 Plan Contains a Separate Class of Section 510(b) Claims

On March 7, 2024 (the "**Petition Date**"), Charge filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing Charge's chapter 11 case. The *Debtor's Conformed Combined Disclosure Statement and Prepackaged Chapter 11 Plan of Reorganization* (the "**Plan**") (App. A000025–081) was confirmed on April 24, 2024, and went effective on May 3, 2024.

The Plan classifies all allowed and unsubordinated general unsecured claims in Class 4 (defined in the Plan) and provides for their payment in full. The Plan further provides, however, that all Section 510(b) Claims shall be classified in Class 5 (defined in the Plan) to be discharged without recovery. (App. A000057). Section 510(b) Claims are defined in the Plan as "any unsecured, non-priority Claim that is subordinated in right of distribution to General Unsecured Claims or Preferred Interests, or both, by operation of section 510(b) of the Bankruptcy Code." (App. A000052).

Craig Harper Denson ("**Denson**"), a former board member, chief operating officer, and interim chief executive officer filed proof of claim 10016. Leah

Schweller ("**Schweller**," and with Denson, "**Appellants**"), a former chief financial officer, filed proof of claim number 10028 (together with proof of claim number 10016, the "**Indemnification Claims**") for purported indemnification obligations and for an undetermined amount. (App. A000082–241; A000242–393). The Indemnification Claims reference the Indemnification Agreement dated February 7, 2023, between Charge and Appellants (the "**Indemnification Agreement**") (App. A000395–412) and attach certain corporate governance documents and other documents that are not relevant to this appeal.

The Indemnification Agreement makes clear that certain conditions must be met before Appellants would ever be entitled to indemnification from Charge. More specifically, Appellants must have been successful on the merits of the litigation. (App. A000399–400). They have not been, as discussed further below. Appellants must also have satisfied the requisite standard of conduct under Delaware law, which they have not and cannot meet based on the nature of the underlying lawsuits pending against them. (App. A000399–402). Lastly, Appellants must have submitted an undertaking to Charge to be entitled to an advancement of expenses and costs, which is also required under Delaware law. (App. A000398); *see* 8 Del. C. § 145(a). Appellants have failed to meet this requirement as well. (App. A000082–241; A000242–393).

## II. The Pending Litigations Against Appellants Relate to the Purchase and Sale of Charge's Securities

Appellants are the subject of two ongoing lawsuits for misconduct while serving as officers of Charge. These cases are the reason Appellants are seeking indemnification and are described herein.

On May 28, 2024, David Finkelstein, in his individual capacity and on behalf of other similarly situated shareholders, filed a complaint in the United States District Court for the Southern District of New York (the "**Securities Class Action**") alleging that Appellants and Andrew Fox violated sections 10(b) and 20(a) of the 1934 Securities Exchange Act (the "**Exchange Act**"). (App. A000413). Section 10(b) of the Exchange Act imposes liability when a defendant either (a) employed devices, schemes, and artifices to defraud, (b) made untrue statements of material fact or failed to state material facts necessary in order to make the statements made, in light of the circumstances which they were made, not misleading, or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the plaintiff and other similarly situated persons in connection with their purchase of stock. 15 U.S.C. § 78j(b). Similarly, section 20(a) imposes liability for "controlling persons" (*e.g.*, directors and officers) for violations of section 10(b) of the Exchange Act. *Id.* § 78t(a). The complaint filed in the Securities Class Action raises specific allegations against Appellants (and other directors and officers) that are based on (a)

repeated misrepresentations about (i) the nature of Charge's relationship with a third party, (ii) the degree of control that particular third party exercised over Charge's assets that were critical to its liquidity, and (iii) the nature of the investments that such third party held on Charge's behalf and (b) the fact that Appellants (and other directors and officers) certified the strength and adequacy of Charge's internal disclosure controls even though there were issues related to such controls. (App. A000425–435; A000440–442). As of the date hereof, this litigation remains pending against Appellants. No final judgment has been reached.

On June 26, 2024, AI Amped I, LLC, AI Amped II, LLC, Arena Origination Co., LLC, Arena Special Opportunities Fund, LP, Arena Special Opportunities Partners I, LP, and Mt. Whitney Securities, LLC (collectively, the "**Arena Plaintiffs**") filed a complaint in the New York Supreme Court against Appellants and other defendants alleging fraudulent inducement or misrepresentation, negligent misrepresentation, and breach of fiduciary duties (the "**Arena Litigation**" and, together with the Securities Class Action, the "**Pending Litigation**"). (App. A000445–486). The complaint filed in this lawsuit details the defendants' dereliction of their duties with respect to transactions between Charge and certain conflicted third parties, the unauthorized use of Charge's funds that was known or knowable to the defendants, and the misstatements that the defendants made to induce the Arena Plaintiffs into loaning Charge money and purchasing Charge's

stock. (App. A000449–484). As of the date hereof, this litigation remains pending against Appellants and other defendants. No final judgment has been reached.

Appellants submitted a demand for advancement of attorney's fees and expenses to defend against the claims in the Securities Class Action but not the Arena Litigation. (App. A000487). The demand for advancement failed to include an undertaking. (App. A000487). The Reorganized Debtor promptly responded to the demand, stating that the advancement was denied and that their proof of claims filed in the chapter 11 case will be subject to a forthcoming objection. (App. A000488).

## III. Charge Objects to Appellants' Indemnification Claims

On August 27, 2024, the Reorganized Debtor objected to the Indemnification Claims, among others, via omnibus claims objection (hereinafter referred to as the "**First Claims Objection**" (App. A000489–2218)) that sought to reclassify such claims as Section 510(b) Claims, which are subordinated under the Plan. Appellants responded to the First Claims Objection on September 30, 2024, asserting that the request to reclassify their Indemnification Claims was not properly before the Bankruptcy Court because such relief should have been brought in an adversary proceeding, as purportedly required under the Bankruptcy Rules. (App. A002219; A002222–223). Appellants did not raise any substantive arguments with respect to the section 510(b) issue in their response. (App. A002219–231). The Reorganized

Debtor filed its reply, arguing that the Bankruptcy Rules permit it to file claim objections seeking to subordinate Section 510(b) Claims pursuant to the terms of the Plan. (App. A002232–34). A hearing was held before the Bankruptcy Court on October 10, 2024, at which time Appellants' counsel made procedural argument of another former director and officer on the record. *See* (App. A002242; A002323–325; A002337 October 17, 2024 Hr'g Tr. [ECF 140] at 30:16-31:4, 44:5-13) (Appellants' counsel states that Appellants "incorporate by reference . . . the reasons stated in our client's papers that were filed and articulated on behalf of Mr. Fox," and stating later in the hearing that "[they] want to join and adopt for the record the arguments of Mr. Fox"). The Bankruptcy Court took the First Omnibus Claim Objection with respect to the responding parties, including Appellants, under advisement. (App. A002242).

## IV. The Bankruptcy Court Grants the First Omnibus Objection and Subordinates the Indemnification Claims

On December 16, 2024, the Bankruptcy Court issued the Memorandum Opinion and Order granting the First Omnibus Objection, which reclassified and subordinated the Indemnification Claims (among others) under section 510(b) of the Bankruptcy Code. (App. A000001–003). The Bankruptcy Court reached this conclusion after applying the Third Circuit's test (discussed further below), which requires a "nexus or causal relationship" between the claim and the purchase or sale

of securities. (App. A000018). It found that such nexus existed because both the Securities Class Action and Arena Litigation arose from alleged misconduct during the sale of securities, and the Indemnification Claim, in turn, arose from those lawsuits. (App. A000020–022). The Bankruptcy Court rejected another claimant's argument that indemnification claims based on contract are exempt from section 510(b), finding that this section applies as long as the claim arises from the purchase or sale of the debtors' securities. (App. A000023). The Indemnification Claims in this case satisfies that test. (App. A000021–023).

### V. Appellants Appeal Subordination Ruling

On December 30, 2024, Appellants filed a notice of appeal in this Court (App. A002262), and on February 13, 2026, the parties entered a stipulation setting April 6, 2026, as the deadline to respond to their Brief. (App. A002292).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's decision to subordinate Appellants' Indemnification Claims pursuant to section 510(b) of the Bankruptcy Code was correct and thus should be upheld. Four reasons support this result.

First, Appellants waived the issue of whether the Indemnification Claims that are based on a contract are carved out of section 510(b)'s ambit. Appellants purported to "adopt" the argument of another party at the hearing before the



132773612

Bankruptcy Court without any analysis as to how such argument applies to them. Mere adoption by reference is insufficient to preserve an issue for appeal.

Second, the only issue Appellants properly preserved for their appeal is whether Charge's request to reclassify the Indemnification Claims as Section 510(b) Claims under the Plan must have been brought in an adversary proceeding under Rule 7001. Not so. The confirmed Plan in Charge contemplates a class of subordinated claims, thus satisfying the exception to the general rule requiring an adversary proceeding to obtain such relief.

Third, should this Court decide the merits of the section 510(b) issue, the Bankruptcy Court decision should be affirmed. There is no exception in the text of section 510(b) for claims arising under a contract. Section 510(b) mandates subordination of any claim "arising from" the purchase or sale of a debtor's securities; this provision does not distinguish between whether the legal basis for that claim sounds in contract, tort, statute, or any other body of law. All that is required is a nexus between such claim and the relevant securities transaction. Here, that requirement is met. Appellants are seeking indemnification for their potential liability in the Pending Litigations, which concerns their misconduct as it relates to the purchase and sale of Charge's securities. The Bankruptcy Court correctly found the Indemnification Claims should be subordinated, which is supported by both the legislative history and the weight of the case law.

Last, if this Court affirms the subordination of the Indemnification Claims (and it should), the Plan mandates that such claims be canceled, released, and extinguished as Class 5 Claims with no recovery.

For these reasons, the Bankruptcy Court's decision should be affirmed.

## ARGUMENT

### I. The Bankruptcy Court Properly Granted the Claim Objection to Reclassify the Indemnification Claims as Section 510(b) Claims

The First Claims Objection is the proper procedural mechanism to seek to subordinate the Indemnification Claims because Bankruptcy Rule 7001 permits parties to seek such relief when subordination is contemplated as part of a chapter 11 plan. *See* Fed. R. Bankr. P. 3007(b), 7001(8). Bankruptcy Rule 3007(b) states that "[i]n objecting to a claim, a party in interest must not include a demand for a type of relief specified in Rule 7001 but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). But Bankruptcy Rule 7001 is clear that an adversary proceeding includes "a proceeding to subordinate an allowed claim or interest—except when subordination is provided in a Chapter 9, 11, 12, or 13 plan." Fed. R. Bankr. P. 7001(d). Here, the Plan provides for the subordination of Section 510(b) Claims in Class 5. (App. A000057) (showing that Section 510(b) Claims in Class 5 are after General Unsecured Claims in Class 4 in order of priority). Therefore, an adversary proceeding was not required to reach the issue of claim subordination. *See In re Washington Mutual, Inc.*, 462 B.R. 137, 145 (Bankr. D.

Del. 2011) (considering the debtor's objection to subordinate a claim under section 510(b) when the debtors' plan "provided for a class of subordinated claims").

Appellants raise two arguments in support of their position: (i) section 502(b) lists various basis for filing a claim objection and subordination is not one of them and (ii) Plan's definition of Avoidance Action (as defined in the Plan). Brief at 15–16; (App. A000045). Neither of these arguments hold water.

First, section 502(b) provides grounds upon which a court shall disallow a claim. 11 U.S.C. § 502(b). It does not purport to be an exhaustive or exclusive list of all permissible bases for objecting to a claim. Subordination is not the same thing as disallowance of a claim. A claim can be fully allowed under section 502 but nevertheless subject to subordination under section 510(b). And where a confirmed plan contemplates a separate class for subordinated claims (as the Plan does in this case), the practical effect of sustaining such an objection is not disallowance but rather proper classification and treatment of the claim in accordance with its subordinated status. Courts in the Third Circuit have consistently treated subordination objections as proper claim objections because the alternative—permitting a holder of a section 510(b)-subordinated claim to participate in distributions alongside general unsecured creditors—would frustrate the statutory mandate of section 510(b) and the absolute priority rule that underpins chapter 11 plan confirmation. *See, e.g., In re Touch Am. Holdings, Inc.*, 381 B.R. 95 (Bankr.

D. Del. 2008); *In re Mid-Am. Waste Sys., In*c., 228 B.R. 816 (Bankr. D. Del. 1999).

The Avoidance Action definition in the Plan does not change this outcome. Appellants argue that the Plan lists "subordination" under section 510 as one of the many actions considered as an "Avoidance Action" and therefore Charge had to bring its request for subordination in an adversary proceeding. This argument confuses the issue. The Plan's "Avoidance Action" definition is a preservation mechanism—not a procedural straitjacket. Plans routinely define "Avoidance Actions" broadly to ensure that no potential cause of action is inadvertently abandoned or waived upon confirmation. That drafting convention says nothing about the procedural vehicle through which subordination must be sought. The source of Charge's right to object to a claim on section 510(b) grounds is the Bankruptcy Code itself (not the Plan) and that statutory right is not diminished by a plan definition.

Therefore, the Bankruptcy Court did not commit legal error when granting Charge's request pursuant to the First Claims Objection to treat the Indemnification Claims as Section 510(b) Claims. Appellants' own case supports this view. *See In re USA Com. Mortg. Co*., 377 B.R. 608, 620 (B.A.P. 9th Cir. 2007) ("Of course, a plan can subordinate claims without the need for an adversary proceeding. This exception has little relevance here, since the confirmed plan in this case did not purport to subordinate Appellants' claims." (internal citations omitted)). The other

remaining cases are easily distinguishable, as none involve chapter 11 plans in which there was a class of subordinated claims. *In re J.S. II, L.L.C.*, 389 B.R. 570, 587–88 (Bankr. N.D. Ill. 2008) (citing the exception for plans under Bankruptcy Rule 7001(8) but providing no indication that there was a plan with a class of subordinated claims); *In re Peck Jeep Eagle Inc.*, No. BR 17-0013 8-LA7, 2021 WL 1511640, at *1 (Bankr. S.D. Cal. Apr. 15, 2021) (providing no indication that there was a plan that contained a class of section 510(b) claims); *In re Protarga, Inc.*, No. 03-12564 (PJW), 2004 WL 1906145, at *3 (Bankr. D. Del. Aug. 25, 2004) (same); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL), 2014 WL 2109931 (Bankr. S.D.N.Y. May 20, 2014) (same). Accordingly, the Bankruptcy Court's decision was proper and should be affirmed.

## II. Appellants Waived the Merits of the Section 510(b) Issue on Appeal By Failing to Develop the Argument in the Bankruptcy Court.

District courts sitting as appellate courts in bankruptcy cases apply the same preservation doctrines as the circuit courts of appeal. *In re Odyssey Contracting Corp.*, 944 F.3d 483, 487–88 (3d Cir. 2019). Appellants did not argue in their response to the First Claims Objections that the Indemnification Claims are not subject to subordination under section 510(b) because they are based on a contract. (App. A002219–231). Another party raised this argument below. *Buncher Co. v. Off. Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 253

(3d Cir. 2000) ("We agree with the District Court that the Buncher Group waived the lien issue by failing to raise it in the Bankruptcy Court."). Instead, Appellants merely "adopt[ed]" those arguments at the hearing with no development as to how this argument applies to Appellants. (*See* App. A002323–325; A002337). Mere similarities between Appellants' and another party's circumstances are insufficient to alleviate Appellants of their burden to actually present and develop the argument as applied to them. Appellants therefore have waived (or forfeited) this issue by making only a passing reference to it and failing "to make arguments and cite authorities in support of [the] issue." *Rubinstein v. Yehuda*, 38 F.4th 982, 995 (11th Cir. 2022) (internal citation omitted). Therefore, this Court should not consider the merits of the section 510(b) issue because there are no "exceptional circumstances" that warrant review. *Barna v. Board of School Directors of Panther Valley School District*, 877 F.3d 136, 145–48 (3d Cir. 2017).

## III. This Court Should Affirm the Bankruptcy Court's Decision to Subordinate the Indemnification Claims.

The merits of the subordination issue, if reached, are straightforward. The Indemnification Claims arose from the purchase or sale of Charge's securities and were properly reclassified and subordinated under section 510(b) of the Bankruptcy Code. Section 510(b) provides as follows:

> For the purpose of distribution under this title, **a claim** arising from rescission of a purchase or sale of a security

> of the debtor or of an affiliate of the debtor, **for damages arising from the purchase or sale of such a security, or for reimbursement or contribution** allowed under section 502 **on account of such a claim**, **shall be subordinated** to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added).

Although the term "arising from" in section 510(b) has been found to be ambiguous, the Third Circuit ultimately clarified its meaning in *In re Telegroup, Inc*. *See Baroda Hill Invs. v. Telegroup, Inc.* (*In re Telegroup, Inc.*), 281 F.3d 133 (3d Cir. 2002). There, the court held that section 510(b)'s "arising from" language requires a "causal relationship" or "some nexus" between the claim and the purchase or sale of the debtor's securities. *See id*., at 138, 143–44, n.2 (indicating that a causal relationship may exist when there is a "but for" nexus between the claim and the purchase or sale). In doing so, the *Telegroup* court made clear that there was no reason (based on either the statute or public policy) to treat contract claims any differently than tort claims:

> Given that the text of § 510(b) may be reasonably read to apply to both claims alleging fraud in the issuance and the claims in this case . . . we see no reason as a matter of policy why a fraud claim against Telegroup for misrepresenting to buyers that it was using its best efforts to register its stock should be subordinated under § 510(b), but a contract claim against Telegroup for breaching its

> agreement to use its best efforts to register its stock should not.

*In re Telegroup, Inc.*, 281 F.3d 143 (internal citations omitted).

The Bankruptcy Court applied this ruling correctly to the facts of this case and subordinated Appellants' claims as a result. Appellants, however, argue for the opposite outcome. In seeking this result, Appellants ask this Court to carve out of section 510(b)'s ambit directors and officers who assert contract claims. This Court should decline Appellants' invitation to do so, as no such exception exists in the statute, legislative history, or case law.

### A. There Is No Exception for Contract Claims in Section 510(b).

Appellants' argument that their claim should not be subordinated because it is based on the Indemnification Agreement misses the point of the statute. The phrase "arising from" in section 510(b) does not examine whether the claim is based on contract or some other law. *See Telegroup*, 281 F.3d at 143. Rather, section 510(b) is concerned with the nature and substance of the underlying claim—not the reason why a claimant is able to recover from the debtor. As the leading bankruptcy treatise spells out, it is the ***subject matter*** of the claim that matters:

> Section 510(b) provides for the mandatory subordination of claims "arising from" a securities transaction. Courts have viewed this language as ambiguous, generally interpreting the provision broadly to include a wide variety of causes of actions arising out of securities transactions. **Under this broad reading, the claim need not flow**

> **directly from the securities transaction or arise contemporaneously with the purchase or sale of a security, but will be viewed as "arising from" a securities transaction if the transaction is part of the causal link leading to the injury.**

*4 Collier on Bankruptcy* P. 510.04, at 3 (16th ed. 2026) (emphasis added) (citations omitted).

Consistent with this interpretation, the Bankruptcy Court determined that the subject matter of the Indemnification Claims was the underlying litigation for which Appellants seek indemnification. (App. A000023). Appellants admit that they sent a demand letter to Charge for indemnification based on the Securities Class Action. *See* Brief at 7 (Dist. D.I. 20). They also admit that the Pending Litigations raise claims based on federal securities law and common law and are both related to Appellants' misconduct concerning Charge's issuance of securities. *See* Brief at 3–4 (Dist. D.I. 20). There would be no reason for Appellants to seek indemnification from Charge but for the Pending Litigations that seek to hold them liable for such misconduct. As such, the causal link between the Indemnification Claims and the purchase or sale of Charge's securities is clear.

Appellants attempt to circumvent this reality by arguing that the Indemnification Agreement would exist regardless of whether there was any pending litigation. *See* Brief at 27 (Dist. D.I. 20). Although this is true, the fatal flaw with this contention is that Appellants would not have an Indemnification Claim *but for*

the Pending Litigations. In other words, Appellants would have no liability for which they needed to be indemnified if they were not being sued. The mere existence of the Indemnification Agreement is not enough; there must be some potential or actual liability that would trigger the terms of the Indemnification Agreement and precipitate Appellants' need for indemnification. (App. A000399–401) (making clear that there is no automatic, unconditional obligation to indemnify). The Bankruptcy Court recognized that and therefore correctly examined the substance of the Indemnification Claim, which derives from the claims raised in the Pending Litigations, to find that such Claim is based on the purchase or sale of Charge's stock and should be subordinated under section 510(b).

Subordination under section 510(b) draws no distinction between a claim based on a contract, a statute, or some other law. *See* 11 U.S.C. § 510(b); *see also, e.g., In re Washington Mut., Inc.,* 464 B.R. 656, 669–70 (Bankr. D. Del. 2012) (collecting cases); *In re Walnut Equip. Leasing Co., Inc.,* No. 97-19699DWS, 1999 WL 1271762, at *6 (Bankr. E.D. Pa. Dec. 28, 1999) (stating that the language of section 510(b) "is sufficiently broad to include any claim for indemnification of defense costs incurred in connection with a lawsuit seeking damages arising from the purchase or sale of securities regardless of whether the indemnification obligation is based on a statute, a contractual agreement or otherwise").

Courts construing this provision cannot read such a distinction into the provision when none exists. *See, generally, In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.") (internal citations omitted); *In re Phila. Newspaper, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (indicating that courts must apply the Bankruptcy Code's plain language); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, at 6 (2000) ("As we have previously noted in construing another provision [of a bankruptcy statute], when 'the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.'") (citations and internal quotation marks omitted). Thus, the Bankruptcy Court properly subordinated the Indemnification Claims based on their substance, as required under section 510(b).

**B. The Legislative Record Supports the Bankruptcy Court's Ruling.**

Appellants also argue that the Bankruptcy Court erred in failing to construe section 510(b) consistent with its legislative history and purpose. (Brief at 28–29 (Dist. D.I. 20)). This argument also fails. The Bankruptcy Court did not need to explicitly address whether public policy weighed in favor of subordinating the Indemnification Claims because it is well-established. Section 510(b) was amended in 1984 to include claims for reimbursement or contribution on account of damages or rescission of a claim. *See In re Lehman Bros. Inc.*, 808 F.3d 942, 948 (2d Cir.

2015). Although this amendment did not include corresponding legislative history material, the addition of this clause was a broadening measure. *See id.* The inclusion of reimbursement and contribution claims added to the scope of section 510(b) "new classes of persons and entities involved with the securities transactions giving rise to the rescission and damage claims." *See In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 826 (Bankr. Del. 1999). "Congress intended the holders of securities law claims to be subordinated," so by extension the claims of underwriters, directors, and officers who have been involved in the tainted securities transaction should similarly have such claims subordinated. *Id.* Courts facing a decision to subordinate a director's or officer's claim arising from a tainted securities transaction have done so. *See, e.g., In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 104–06 (Bankr. D. Del. 2008) (holding that directors' and officers' "indemnification claims for liability and costs associated with the ERISA Litigation should be subordinated under [s]ection 510(b)"); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 819–20, 825–26, 829 (Bankr. D. Del. 1999) (holding that section 510(b) subordination was required for liability and expenses incurred resulting from securities fraud claims).

Appellants assert that claims by directors and officers for indemnification render them more like general unsecured creditors than equity holders, thus weighing against subordination. (Brief at 24–25 (Dist. D.I. 20)). This argument fails for two reasons. First, "claims alleging fraud or other illegality in the issuance

of securities" are "at the core of the claims that arise from the purchase or sale of … a security" that is subject to subordination under section 510(b). *Telegroup*, 281 F.3d at 140 (citation omitted). Here, the Bankruptcy Court found that the plaintiffs in the Securities Class Action alleged that Appellants made certain misrepresentations in violation of section 10(b) of the Exchange Act, which makes it illegal to use any deceptive device in connection with the purchase or sale of securities. (App. A000020–021). Likewise, it also found that the plaintiffs in the Arena Litigation alleged that Appellants "committed fraudulent inducement/misrepresentation, negligent misrepresentation, and breach of fiduciary duties in [their] sale of securities." (App. A000021). Under these facts, the directors and officers should bear the risk of an illegal securities transaction when they are "in [the] better position"—considering their insider role at the security issuer—to allocate such risk compared to a general unsecured creditor. *See Mid-Am. Waste Sys.*, 228 B.R. at 828; *Lehman Bros.*, 808 F.3d at 950 n. 9 (2d Cir. 2015). As such, Appellants—former Charge insiders—are more like shareholders in their assumption of risk in engaging in the securities transaction than general unsecured creditors.

Second, Congress intended section 510(b) to "prevent disaffected equity investors from recouping their investment losses in parity with general unsecured creditors[.]" *Telegroup*, 281 F.3d at 142. The plaintiffs in the Pending Litigations

are former shareholders of Charge. If these shareholders recover damages from Appellants and Appellants then turn to Charge as unsecured creditors to be repaid for the amount paid to the shareholders, then such shareholders would have achieved the exact result Congress sought to prevent. Such outcome in this case is particularly at odds with Congress' intent because the Plan contemplates that general unsecured creditors are to be paid in full. (App. A000037–038). Holders of subordinated claims are receiving nothing under the Plan. (App. A000038–039). As a result, the treatment of Appellants' Indemnification Claims in a manner inconsistent with Congress' intent would have a material and deleterious impact on Charge. In fact, Charge would face a significant financial burden, as there is another indemnification claim that has been asserted against Charge and has been appealed to this Court. These claims have the potential to be sizeable, considering that they each derive from the Pending Litigations. Charge may not be able to carry the financial burden of those indemnification claims and could be forced to seek relief under chapter 11 once again. This outcome stands in direct contradiction to the policy objectives underlying section 510(b) and would frustrate the very purpose of the Plan.

Therefore, the exception that Appellants want to create for directors and officers with an indemnification agreement would not align with legislative history and purpose and should be rejected. *See Telegroup*, 281 F.3d at 142.

### C. Courts Applying Section 510(b) to Contract Claims Routinely Subordinate Such Claims When There Is a Causal Relationship to the Purchase or Sale of the Debtor's Securities.

Lastly, Appellants try and fail to shoehorn the facts of this case into *CIT Group*. *In re CIT Grp. Inc.*, 460 B.R. 633 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 F. App'x 393 (2d Cir. 2012). *CIT Group* arose in connection with a spin-off of a subsidiary from its former indirect parent, in which that parent divested itself of the subsidiary via a complex, multi-step transaction consisting of, among other things, an IPO and after which the parent ceased to be a shareholder of the subsidiary. *See id.* A core aspect of this transaction was a tax agreement pursuant to which the subsidiary agreed to pay the parent amounts measured by the tax benefits the subsidiary realized from certain pre-transaction tax attributes. *Id.* at 636. When the subsidiary eventually filed for bankruptcy it rejected this tax agreement, and the parent filed a proof of claim for rejection damages, which the subsidiary sought to subordinate under section 510(b) on the premise that the tax agreement was an "integral part" of the spin-off and therefore connected to the relevant subsidiary securities issuance. *Id.* at 635.

The court found that the "causal connection between the purchase and sale of a security" was too remote to warrant subordination. *Id*. at 643. This is because *CIT Group* involved a duty to pay money under a tax agreement, which was one of several documents that had been executed at the time of a spinoff. *Id.* at 635–36. In

addition, the underlying sale of stock in *CIT Group* was an IPO to third-party purchasers, not to the claimant. Those facts are not present here. *Id.* at 642. Appellants' claims for potential liabilities relate directly to their misconduct during the issuance of securities whereas the liabilities in *CIT Group* were tax-related and the nexus to the debtor's securities was attenuated.

Notably, the same court that issued *CIT Group* agrees that subordination is warranted on facts like the present matter. *In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) ("[Section] 510(b) intends to subordinate the indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities.") (brackets in original). In *Jacom*, the debtor's underwriters asserted an indemnification claim against the bankruptcy estate for costs incurred defending a securities class action (just like Appellants in this case) that was filed against both underwriters and the debtor in connection with the debtor's IPO. *Id.* at 571. The underwriters argued that their claim arose solely from an indemnification and contribution provision in the underwriting agreement and therefore did not "aris[e] from" the purchase or sale of a security within the meaning of section 510(b). *Id.*, at 572. The court rejected that argument, reasoning that section 510(b)'s "reimbursement or contribution" language encompasses indemnification. *Id.* (internal citations omitted).

Moreover, *Jacom* endorsed the Delaware Bankruptcy Court's decision in *In re Mid–Am. Waste Sys., Inc.*, 228 B.R. 816 (Bankr. Del. 1999)—a case Appellants want this Court to reject—noting that a core underlying rationale here is that "[parties like] underwriters are in a better position to allocate risks associated with the issuance of securities and that it is inconsistent with the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs." *Id.* As a result, the court subordinated the underwriters' indemnification claims.

Courts have ruled similarly to *Jacom*. *See, e.g., Telegroup*, 281 F.3d at 144 (stock purchase agreement); *Lehman Bros.*, 808 F.3d at 945 (underwriter agreement); *Betacom of Phoenix*, 240 F.3d 823, 829 (9th Cir. 2001) (merger agreement); *In re Int'l Wireless Communications Holdings, Inc.*, 257 B.R. 739, 744–46 (Bankr. D. Del. 2001), *aff'd,* 279 B.R. 463 (D.Del.2002), *aff'd,* 2003 WL 21466898 (3d Cir. 2003) (stock purchase agreement). To deny Charge's request for subordination would have been to indefensibly rule against the weight of authority on this issue, including Third Circuit precedent.

Appellants try to find points of distinction between this case and cases in this Circuit, but there are no meaningful ones. First, Appellants take issue with *Mid-American Waste* on grounds that it found the term "arising from" to be unambiguous whereas the subsequent *Telegroup* case did not. (Brief at 19, 23 (Dist. D.I. 20)).

This difference in statutory interpretation, however, is of no consequence because the rationale applied in *Mid-American Waste* concerning the policy considerations (and textual analysis of section 510(b)) supporting subordination of a director and/or officer's claim for indemnification is wholly consistent with the Third Circuit's ruling in *Telegroup*; in both cases, the operative principle is that no claimant covered by section 510(b) should be allowed to improve their standing as against general creditors. *See Mid-American Waste*, 228 B.R. at 825–26; *Telegroup*, 281 F.3d at 144.

Second, Appellants want this Court to draw a line between indemnification claims that arise under a corporation's charter (*i.e.*, the *Mid-American Waste* case) and an indemnification agreement (this case). Doing so creates a distinction without a difference, because section 510(b) is not concerned with the basis for a claimant's ability to recover against the issuing corporation: it is the *substance* of the claim that matters. Moreover, a certificate of incorporation, and the DGCL and the bylaws together, constitute a contract among the directors, officers, and stockholders in the corporation. *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1050 (Del. Ch. 2015), *as revised* (May 21, 2015), *judgment entered sub nom. In re Activision Blizzard, Inc. Stockholder Litig.*, No. CV 8885-VCL, 2015 WL 2415559 (Del. Ch. May 20, 2015). There is no meaningful difference to draw between *Mid-American Waste* and the facts of this case.

Similarly, Appellants argue that *Touch Am. Holdings* wrongly focused on the "relationship of the underlying litigation to the sale of securities" and thus "inexplicably found that officers and directors assume 'the risk and return expectations of a shareholder, rather than a creditor'" (Brief at 24 (Dist. D.I. 20)) (citations omitted). However, a straightforward reading of *Touch America* shows that the court's rationale is clear: section 510(b) is not limited to shareholder claims. *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 258 (2d Cir. 2006) ("[A] claimant need not be an actual shareholder for his claim to be covered by the statute."); *Walnut Equipment*, 1999 WL 1271762, at *6–7 (explaining that the language of section 510(b) is not limited to any particular type of *claimant*, but, rather, focuses on the type of *claim* possessed) (emphasis in original); *see also Telegroup*, 281 F.3d at 144 n. 2 ("Nothing in our rationale would require the subordination of a claim simply because the identity of the claimant happened to be a shareholder . . ."). *Touch America*, relying on *Telegroup* and other circuit court decisions, recognized that the plaintiffs in the underlying litigation "took on the risk and return expectations of shareholders" concerning their ERISA plan; and the defendant officers and directors made the decision to continue the plan's investment in a particular stock despite knowing "that the stock was a high risk investment that was steadily declining in value." *Touch Am.*, 381 B.R. at 105–06. Just like the plaintiff's decision to invest was a risk calculus, so was the officers and directors'

choice to continue such investment. *Id.*; *Telegroup*, 281 F.3d 139–42; *Lehman Bros.*, 808 F.3d at 948–50.

That is why courts have consistently recognized that directors' and officers' claims can be subordinated under section 510(b). *Jacom*, 280 B.R. at 572–73 (holding that section 510(b) "intends to subordinate the indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities . . . reimbursement by definition includes indemnification, and indemnification includes attorneys' fees") (citations omitted); *In re Hagerstown Block Co.*, 570 B.R. 494, 500 (Bankr. D. Md. 2017) ("[T]he plain language of § 510(b) [is] unambiguous in holding that the officers'[/]directors' reimbursement claims for attorney's fees would be subordinated") (citation omitted); *Touch Am.*, 381 B.R. at 106 (subordinating statutory indemnification claim asserted by directors and officers under section 510(b)); *Mid-Am. Waste*, 228 B.R. at 824–26 (subordinating indemnification claims of underwriters and directors/officers for legal expenses incurred in defense of securities fraud actions, under the plain language of section 510(b)); *In re Enron Corp. Secs.*, Nos. 1446, H-01-3624, H-05-0774, 2005 U.S. Dist. LEXIS 34029, at *34–35 (S.D. Tex. Dec. 15, 2005) (indicating that the plan provided that indemnification and reimbursement obligations to directors and officers "shall be treated as [s]ection 510 Subordinated

Claims"); *In re Public Service Co. of New Hampshire*, 129 B.R. 3, 4–5 (Bankr. D.N.H. 1991) (sustaining an objection to an insurance company's subrogated indemnification claim (arising from a D&O insurance policy that paid a securities settlement), holding that under section 510(b), reimbursement for a securities damages claim—including indemnification for officers and directors—has a lower priority than a general unsecured claim and must be subordinated); *In re SandRidge Energy, Inc.*, No. 16-32488, 2025 Bankr. LEXIS 1267, at *26 (Bankr. S.D. Tex. Apr. 17, 2025) (stating that "indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities" must be subordinated).

Therefore, this Court should do the same and affirm the Bankruptcy Court.

## IV. The Indemnification Claims Were Properly Canceled, Released, and Extinguished Under the Plan.

The Bankruptcy Court correctly decided to subordinate the Indemnification Claim; and the Plan operated to cancel, release, and extinguish such claim pursuant to its mandatory terms. (App. A000002–024). Because the Bankruptcy Court's decision should be upheld, the treatment of the Indemnification Claims under the Plan should remain unchanged.

## CONCLUSION

For the reasons stated herein, Appellee respectfully requests that this Court (i)

dismiss Appellants Craig Denson and Leah Schweller's appeal or (ii) deny the appeal and affirm the Bankruptcy Court's Order.

[*Remainder of page intentionally left blank*]

Dated: April 6, 2026
Wilmington, DE

Respectfully submitted,
*/s/ Kenneth A. Listwak*

Douglas D. Herrmann (No. 4872)
Kenneth A. Listwak (No. 6300)
**TROUTMAN PEPPER LOCKE LLP**
Hercules Plaza, Suite 1000 1
313 North Market Street,
P.O. Box 1709
Wilmington, DE 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
Email: douglas.herrmann@troutman.com
ken.listwak@troutman.com

-and-

Harrison Denman (admitted *pro hac vice*)
Laura Garr (admitted *pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: harrison.denman@whitecase.com
laura.garr@whitecase.com

-and-

Trudy Smith (admitted *pro hac vice*)
**WHITE & CASE LLP**
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: trudy.smith@whitecase.com

*Counsel to the Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Bankruptcy Rule 8015, the undersigned hereby certifies that this brief complies with the type-volume limitation. Exclusive of the exempted portions specified in Bankruptcy Rule 8015(g), the brief contains 7,077 words. The brief has been prepared using Microsoft Word in 14-point Times New Roman font. The undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

## CERTIFICATE OF SERVICE

I certify that on this 6th day of April, 2026, I caused the foregoing to be filed electronically with the Clerk of the Court via the Court's CM/ECF electronic filing system, so that the document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: April 6, 2026

*/s/ Kenneth A. Listwak*
Kenneth A. Listwak



132773612