**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re:<br><br>CHARGE ENTERPRISES, INC.,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy Case No. 24-10349 (TMH)<br><br>Bankr. BAP No. 24-0081 |
| CRAIG DENSON and<br>LEAH SCHWELLER,<br><br>Appellants,<br><br>v.<br><br>CHARGE ENTERPRISES, INC.,<br><br>Appellee. | Case No. 24-cv-01426 (MN) |

**REPLY BRIEF**

**McCARTER & ENGLISH LLP**

Kate R. Buck (DE# 5140)
Matthew J. Rifino (DE# 4749)
Renaissance Centre
405 N. King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
Kbuck@mccarter.com
Mrifino@mccarter.com

*Attorneys for Appellants*

Dated: May 6, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

LEGAL ARGUMENT ........................................................................................ 1

A. The Officers Preserved Each And Every Issue On Appeal ........................ 1

B. An Adversary Complaint Is The Procedural Mechanism For Seeking The Subordination Of A Claim ........................................................ 1

C. The Bankruptcy Court Erroneously Construed Section 510 Of The Bankruptcy Code. ........................................................................ 3

CONCLUSION ........................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Wagering, Inc.*,
*493 F.3d 1067, 1071 (9th Cir. 2007)* ........ 7

*Baroda Hill Invs. v. Telegroup, Inc. (In re Telegroup, Inc.)*,
281 F.3d 133 (3d Cir. 2002) ........ 4, 5, 6, 7

*In re CIT Grp. Inc.*,
460 B.R. 633 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 Fed. Appx. 393
(2d Cir. 2012) ........ 5, 7, 8, 9

*In re Wash. Mut. Inc., et al.*,
462 B.R. 137 (Bankr. D. Del. 2011) ........ 2

*In re Cybersight LLC*,
2004 WL 2713098 (D. Del. Nov. 17, 2004) ........ 8

*In re DirecTV Latin Am., LLC*,
2004 WL 302303 (D. Del. Feb. 4, 2004) ........ 7, 8, 9

*In re GSE Envir., Inc.*,
2017 WL 5490833 (D. Del. Nov. 15, 2007) ........ 1

*In re Mobil Tool Intern., Inc.*,
306 B.R. 778 (Bankr. D. Del. 2004) ........ 8

*In re Nationsrent, Inc.*,
381 B.R. 83 (Bankr. D. Del. 2008) ........ 8

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
461 F.3d 251 (2d Cir. 2006) ........ 6, 7

*In re RTI Holding Co., LLC*,
2021 WL 3409802 (Bankr. D. Del. Aug. 4, 2021) ........ 4

*The Hagerstown Block Co. v. Soloman (In re Hagerstown Block Co.)*,
570 B.R. 494 (Bankr. D. Md. 2017) ........ 6

*In re Touch Am. Holdings, Inc.*,
381 B.R. 95 (Bankr. D. Del. 2008) .......... 6

**Statutes and Rules**

11 U.S.C. § 502 .......... 2,3

11 U.S.C. § 510 .......... 3, 4, 5, 6, 7, 8, 9

Fed. R. Bankr. P. 3007 .......... 2

Fed. R. Bankr. P. 7001 .......... 2

Appellants Craig Denson ("**Denson**") and Leah Schweller ("**Schweller**," along with Denson, the "**Officers**") submit this reply ("**Reply**") in support of their arguments on appeal.[1]

**A. The Officers Preserved Each And Every Issue On Appeal.**

The Officers did not waive any of their arguments on appeal. While the Answering Brief ("**Ans. Br.**") [D.I. #24] alleges that the Officers did not preserve their contractual arguments, the evidentiary record demonstrates otherwise [A02042-44; A02048-51; A02142-44; A02156-58]. In fact, the Officers expressly referenced and relied upon their contractual rights in the Opposition [A02042-44; A02048-51]. These contractual arguments were raised by counsel for the Officers [A02142; A02144 ("Like Mr. Fox, Mr. Denson and Ms. Schweller's contractual claims are for indemnification …"); A02156-58] and Andrew Fox [A02140-42; A02149] at oral argument. Debtor had ample opportunity to address this argument in the papers, at oral argument, [A02139-69] and on appeal [Ans. Br. at 14-15]. Accordingly, the Officers preserved their contractual arguments before this Court.

**B. An Adversary Complaint Is The Procedural Mechanism For Seeking The Subordination Of A Claim.**

The Bankruptcy Rules required Debtor to seek subordination of the Proofs of Claim through an adversary proceeding. *See generally In re GSE Envir., Inc.*, 2017

[1] Unless otherwise noted herein, the Reply uses capitalized terms as defined in the Opening Brief [D.I. #20].

WL 5490833 (D. Del. Nov. 15, 2007). Bankruptcy Rule 3007(b) is unambiguous. The rule states that "[i]n objecting to a claim, a party in interest must not include *a demand for a type of relief specified in Rule 7001* but may include the objection in an adversary proceeding." FED. R. BANKR. P. 3007(b) (italics added). A demand for subordination is a "demand for a type of relief specified in Rule 7001." Bankruptcy Rule 7001(h) specifically addresses the subordination of allowed claims and provides a carveout only for the subordination of allowed claims under a chapter 11 plan. *See* FED. R. BANKR. P. 7001(h). The carveout does not apply to the present circumstances. First, the Proofs of Claim were not allowed. Second, the Plan does not provide for the subordination of the Proofs of Claim; it merely created a generic class of claims that does not fall within the carveout. *Contra In re Wash. Mut. Inc., et al.*, 462 B.R. 137, 145-47 (Bankr. D. Del. 2011).

The omission of subordination claims from Section 502(b) of the Bankruptcy Code provides additional support. This unambiguous section lists the various bases by which the bankruptcy court may *disallow* a proof of claim. Section 502(b) of the Bankruptcy Code does not reference subordination. *See* 11 U.S.C. § 502(b). This makes sense because, as Debtor recognized, "[s]ubordination is not the same thing as disallowance of a claim" [Ans. Br. at p. 12]. Rather, subordination is a mechanism by which to lower the priority of an *allowed* claim. Ignoring this apples to oranges distinction (which it otherwise recognized), Debtor argues that the omission is

because Section 502(b) of the Bankruptcy Code is not "exhaustive or exclusive" [Ans. Br. at p. 12]. Whether or not it is exhaustive or exclusive, a section specifying ways to *disallow* claims would not reasonably include, implicitly or not, ways to change the priority treatment of an *allowed* claim. Simply stated, a claim objection is the mechanism for seeking disallowance of a proof of claim, while an adversary proceeding is the mechanism for seeking subordination of an allowed claim.

Finally, Debtor argues that requiring that a claim be *found* subordinate, would "permit[] a holder of [a claim labeled as] a section 510(b)-subordinated claim to participate in distributions alongside general unsecured creditors" which would "frustrate the statutory mandate of section 510(b) and the absolute priority rule." [*Id.*]. However, debtors, plan administrators, and trustees routinely delay distributions to claimants until the end of the claim administration process. This case is no different. Debtor should have filed an adversary complaint to subordinate the Proofs of Claim, and if it was successful, the Officers' recovery would be limited to the treatment provided under the Plan.

**C. The Bankruptcy Court Erroneously Construed Section 510 Of The Bankruptcy Code.**

This issue turns on the interpretation of Section 510(b) of the Bankruptcy Code. The section states:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of

> such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b). The Third Circuit held that the statute is ambiguous. *See Baroda Hill Invs. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 138 (3d Cir. 2002). Attempting to resolve this ambiguity, the appellate court considered Congress's intent to "prevent disappointed shareholders from recovering the value of their investment by filing bankruptcy claims predicated on the issuer's unlawful conduct at the time of issuance, when the shareholders assumed the risk of business failure by investing in equity rather than debt instruments." *Id.* at 141 (quoting John J. Slain and Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U. L.Rev. 261, 261, 267-68 (1973)). *See also In re RTI Holding Co., LLC*, 2021 WL 3409802, at *4 (Bankr. D. Del. Aug. 4, 2021). The Third Circuit concluded:

> Section 510(b) thus represents a Congressional judgment that, ***as between shareholders and general unsecured creditors***, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy.

*In re Telegroup, Inc.*, 281 F.3d at 141 (emphasis added). Accordingly, a claim arises out of the purchase or sale of securities under Section 510(b) of the Bankruptcy Code if it possesses "some nexus or causal relationship between the claim and the sale of

the security[.]" *Id.* at 138. However, "the precise scope of the required nexus" is unclear. *Id. See also In re CIT Grp. Inc.*, 460 B.R. 633, 639 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 Fed. Appx. 393 (2d Cir. 2012) ("[T]he existence of a mere 'connection' between the claim and the purchase or sale of a security is not enough to support a finding that the claim 'arises from' the purchase or sale and should be subordinated unless the purposes of the statute would be served thereby.").

The Officers' claims for indemnification do not fall within the scope of Section 510(b) of the Bankruptcy Code. Debtor asserts that the statute does not differentiate between types of claim; rather, the statute concerns all types of claims. This assertion misses the mark, because the Third Circuit construed the statutory language to require "some nexus or causal relationship between the claim and the sale of the security[.]" *In re Telegroup, Inc.*, 281 F.3d at 138. Here, the contractual nature of the Officers' claims and vesting of their contractual rights lack the requisite relationship.

Third Circuit case law relating to the subordination of claims under Section 510(b) of the Bankruptcy Code predominantly concerns shareholders. Third Circuit precedent deems shareholders to have assumed the risk of loss. Few decisions concern the claims of ***officers and directors*** for indemnification in the context of

Section 510(b).[2] *See, e.g.*, *In re Touch Am. Holdings, Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008); *Mid-Am. Waste Sys., Inc.*, 228 B.R. 816 (Bankr. D. Del. 1999). The Officers explained, in detail, why these prior cases do not support the Bankruptcy Court's decision [Op. Br. at pp. 22-27]. These prior cases, which did not address contractual indemnity rights in the context of Section 510(b), are not helpful. Further, Debtor's quotation of an excerpt from *Telegroup* lacks persuasive value [Ans. Br. at pp. 16-17], because *Telegroup* concerned the contractual claims of shareholders under a stock purchase agreement, not the contractual indemnification claims of officers and directors. The excerpt certainly does not stand for the proposition that officers' and directors' contractual claims for indemnity fall within the scope of Section 510(b) of Bankruptcy Code.

The decisional law compels the Court to focus its attention on a singular question—whether officers and directors bear the risk of illegality related to the issuance of stock, like shareholders, such that officers' and directors' indemnification claims are subordinated in the event that the issuer files for bankruptcy. *See In re Hagerstown Block Co.*, 570 B.R. at 497 ("Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of

[2] The Answering Brief cites to a number of cases concerning claims of the purchaser of stock. *See, e.g., Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006) (claim relating to the debtor's failure to issue its stock in exchange for stock in another company); *The Hagerstown Block Co. v. Soloman (In re Hagerstown Block Co.)*, 570 B.R. 494 (Bankr. D. Md. 2017) (claim relating to damages under stock repurchase agreement)

corporate assets.") (quoting *In re Am. Wagering, Inc.*, 493 F.3d 1067, 1071 (9th Cir. 2007)). The assumption of risk is the practical underpinning for Section 510(b) of the Bankruptcy Code. *See In re Telegroup, Inc.*, 281 F.3d at 141. *See also In re Med Diversified, Inc.*, 461 F.3d at 256 ("[W]e conform our interpretation of the statute to require subordination here only if Rombro … took on the risk and return expectations of a shareholder, rather than a creditor …"). The answer is no. Officers and directors do not bear the risk of illegality related to the issuance of stock, like shareholders, such that officers' and directors' indemnification claims are subordinated in the event that the issuer files for bankruptcy. Congress did not intend for Section 510(b) of the Bankruptcy Code to subordinate an officer and director's independent, contractual right to indemnity. *See In re CIT Grp. Inc.*, 460 B.R. at 639; *In re Mid-American Waste, Inc.*, 228 B.R. at 826. Further, the District of Delaware has expressed reservation with subordinating claims that do not "further[] the anti-bootstrapping intent of § 510(b) so that those who have [not] contractually accepted the risk of business failure, bear that burden in bankruptcy." *In re DirecTV Latin Am., LLC*, 2004 WL 302303, *3 (D. Del. Feb. 4, 2004).

The parties' conduct demonstrates their intent that the Officers not assume the risk of loss, in which the Indemnification Agreements acknowledge "the increased risk of litigation" and "the need to provide [officers] with substantial protection against personal liability" [A00139-151; A00292-309]. The Indemnification

Agreements created actual, legal protections for the Officers, including, but not limited to Debtor's obligation to indemnify the Officers for their losses, fees, and out-of-pocket expenses [*Id.*]. As set forth in the Opening Brief [Op. Br. at pp. 7-8], the Officers are entitled to mandatory indemnification under Sections 8(a) and 8(c) of the Indemnity Agreements. This point dispels the notion that subordination of the Officers' contractual claims serves either of the stated purposes for Section 510(b) of the Bankruptcy Code, in which the Officers did not assume the risk of loss, the market did not allocate risk to the Officers, and the Officers did not rely on a purported equity cushion when accepting their management position. *See In re CIT Grp. Inc.*, 460 B.R. at 641 ("[T]here is nothing inherent in an interaffiliate tax agreement that would justify treating Tyco's interest like equity."); *In re Cybersight LLC*, 2004 WL 2713098, *3-4 (D. Del. Nov. 17, 2004) (affirming bankruptcy court's ruling that claimant's conversion of equity interest into a debt obligation prevented claimant from "participat[ing] in the benefits and risks associated with being equity holders"); *In re Nationsrent, Inc.*, 381 B.R. 83, 92 (Bankr. D. Del. 2008) (finding that the claimants "were not investors, nor were they speculating on the success of the [d]ebtors. Instead, the Make Whole Amounts . . . provide the Seller Claimants with their bargained for sales price."); *In re Mobil Tool Intern., Inc.*, 306 B.R. 778, 782 (Bankr. D. Del. 2004) (finding that the defendants' acceptance of a promissory note in exchange for their shares in the debtor "removed the variable nature of their

investment and placed themselves in the position of general creditors”); *In re DirecTV Latin Am., LLC*, 2004 WL 302303, at *4-5 (reversing bankruptcy court’s subordination of claim arising from put option where the claimant did not contract for the risk). Unlike shareholders, the Officers did not share in the profits; their indemnification rights did not increase in value as a result of Debtor’s prosperity. *See In re CIT Grp.*, 460 B.R. at 640. The Officers’ claims bear resemblance to those of a creditor, as opposed to a shareholder, and they should not be subject to Section 510(b) of the Bankruptcy Code. *See id*.

## CONCLUSION

Appellants Craig Denson and Leah Schweller request that this Honorable Court reverse the Bankruptcy Court’s decision, overrule the First Claim Objection, and remand the case to the Bankruptcy Court for further proceedings consistent herewith.

Dated: May 6, 2026
Wilmington, Delaware

**McCARTER & ENGLISH LLP**

/s/ *Kate R. Buck*
Kate R. Buck (DE# 5140)
Matthew J. Rifino (DE# 4749)
Renaissance Centre
405 N. King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
Kbuck@mccarter.com
Mrifino@mccarter.com

*Attorneys for Appellants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re:<br><br>CHARGE ENTERPRISES, INC.,<br><br>Debtor. | : | Chapter 11<br><br>Bankruptcy Case No. 24-10349 (TMH)<br><br>Bankr. BAP No. 24-0081 |
| CRAIG DENSON and<br>LEAH SCHWELLER,<br><br>Appellants,<br><br>v.<br><br>CHARGE ENTERPRISES, INC.,<br><br>Appellee. | : | Case No. 24-cv-01426 (MN) |

**CERTIFICATION OF COMPLIANCE WITH FED. R. BANKR. P. 8015**

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015 because this document contains approximately 2,196 words based on the calculation of the Microsoft Word software.

**McCARTER & ENGLISH LLP**

/s/ *Kate R. Buck*
Kate R. Buck (DE# 5140)

*Attorneys for Appellants*

Dated: May 6, 2026